(596 P 2d 167)

No. 49,992

ROBERT D. McCOLM and DORIS McCOLM, *Appellees,* v. JAMES E. STEGMAN, NANCY STEGMAN, LYLE KREGAR and RHINDA BARTLETT, *Appellants.*

Opinion filed June 15, 1979.

*Terry J. Malone* and *B. G. Larson,* of Williams, Larson, Voss, Strobel & Estes, of Dodge City, for appellants.

*Harry A. Waite,* of Dodge City, for appellees.

Before FOTH, C.J., ABBOTT and PARKS, JJ.

ABBOTT, J.: This is an action to enjoin the violation of a restrictive covenant. The sole issue in this case is whether the plaintiffs, Robert D. and Doris McColm, should be allowed to

enforce a restrictive covenant prohibiting the location of mobile homes on the real estate in question. The defendants are James E. and Nancy Stegman, the landowners of the affected property, and their lessees, Lyle Kregar and Rhinda Bartlett. Each of the lessees owns a mobile home located on lots subject to the restrictive covenant. The defendants contend plaintiffs are barred by waiver, acquiescence or laches from enforcing the restrictive covenant. After hearing evidence, the trial court enjoined defendants against violation of the restrictive covenant and ordered the mobile homes removed from the property. The defendants appeal.

Although there is some confusion in the record concerning dates, the parties generally agree on the pertinent facts. In 1946, the plaintiffs acquired a quarter section of land along the west side of Bucklin, Kansas. In 1953, the one-block subdivision in question was platted and named "West Side Addition No. 1." The west and east halves of the block are divided by a north-south alleyway the length of the block. Lots therein are only 25 feet in width except for lot 12, which is 241 feet in width and is located on the southeast corner of the block. The odd-sized lot was donated by plaintiffs to the hospital district, which constructed a hospital thereon, and does not figure in this case. Plaintiffs built a home on the northeast corner of the block on lots 1, 2, 3 and 4, with the lots in question lying immediately south of plaintiffs' home on lots 5, 6 and 7. To the south of them lie lots 8, 9, 10 and 11, which were subsequently purchased by the hospital district and which have not been used for building purposes. The west side of the block is vacant except for one *mobile home* on lots owned by a Mr. Ed Olemon directly across the alley from the lots alleged to be in violation. Olemon has had a mobile home on the lots since 1973, and at the time of oral argument the mobile home was still in place. Olemon was not named as a party to this action, and at the time of oral argument no action was pending against him to enforce the restrictive covenants. Plaintiffs did testify that if they are successful in this action they plan to institute an action against Olemon if he does not voluntarily move. All other lots in the block appear to be owned either by plaintiffs or the hospital district.

Prior to filing the plat in 1953, restrictive covenants were filed which prohibited structures or facilities for temporary residences

and established a minimum number of square feet of floor space. The parties do not argue that mobile homes are not prohibited under the restrictive covenants.

In 1967 or 1969, lots 5, 6 and 7 were first used for a mobile home site. The plaintiffs presented testimony that in 1967, at the request of the hospital board, they installed utilities for a mobile home and rented the site to a hospital employee. They introduced bills for the utility installation cost and deposit slips for rent receipts. Plaintiffs testified the lots were first used for a mobile home site in 1969 and they gave their permission to the original occupant for that use on a temporary basis. They further testified that the local school board needed a music teacher and had located one who was satisfactory and who was willing to accept the job if a suitable location for a mobile home could be found. Although plaintiffs had sold lots 5, 6 and 7 several years before 1969, they consented to a mobile home being located on the lots. According to plaintiffs' testimony, a mobile home was first moved on the lots in August 1969 and remained thereon until May 1973, at which time the music teacher was employed by a different school district and moved the mobile home. In October 1973, a Mr. Fisher purchased the lots and his son installed a mobile home thereon about November 1, 1973. No permission to do so was requested by Fisher, and none was granted. Although plaintiffs were aware Fisher's mobile home was on the lots, they did not give express permission for that use to the Fishers or any subsequent occupiers of the lots, nor did they make their objection to such use known to any occupant until shortly before this suit was commenced. Olemon, who moved his mobile home across the alley in 1973, did not request permission, and none was granted. Fisher moved out of the mobile home in March 1976 and it remained empty until May of that year when it was sold and removed from the lot.

The lots were then sold to the defendants James E. and Nancy Stegman in July 1976. Stegmans received a quitclaim deed and an abstract of title. They did not have the abstract of title examined and subsequently testified that, although they knew the lot had previously been occupied by a mobile home, they were not aware of the restrictions. No one questions the fact the restrictive covenants were properly recorded and imparted constructive notice. The Stegmans promptly moved a mobile home onto the

lots and resided therein for over a year, at which time they sold the mobile home to the defendant Lyle Kregar but retained ownership of the land. Shortly thereafter, plaintiffs notified Kregar of the restrictions and of their intent to enforce the restrictions. Plaintiffs had learned that the Stegmans intended to rent out space for a second trailer to be placed on the lots, and that fact appears to have triggered their desire to enforce the covenant. The defendant Rhinda Bartlett leased space on the rear of the three lots and moved her mobile home onto the lots. Although Rhinda Bartlett moved her mobile home onto the lots after this action was commenced, Stegman testified he had leased the land to her prior to this suit having been filed.

The district court, in granting the injunction and ordering the mobile homes removed, found as follows:

"The court finds that it would be inequitable to permit the present use of the property for two trailer homes in view of the fact that the original agreement permitting the Kingsley family to move on to the property with a mobile home was limited to a single mobile home.

"The court finds that the plaintiffs' right to enforce such restrictive covenants has not been lost by laches, waiver and acquiescence in violations of such restrictive covenants.

"The court finds that the defendants have not changed their respective positions so as to make it inequitable to enforce the restrictions. The court finds there is no evidence of a general and continuous violation of the restrictive covenants such as would constitute acquiescence on the part of the plaintiffs.

"The court finds that the defendants are presently violating the restrictive covenants by the use of Lots 5, 6 and 7 of said West Side Addition to Bucklin, Kansas, for parking mobile homes."

The enforceability of restrictive covenants has its origin in common law and has long been recognized in the State of Kansas. *Tulk v. Moxhay,* 2 Ph. 774, 41 Eng. Rep. 1143 (1848); *Godfrey v. Black,* 39 Kan. 193, 17 Pac. 849 (1888). Restrictions or equitable servitudes are based on the equitable principle of notice whereby a person who takes land with notice of a restriction upon it will not be permitted to act in violation of it. *Hecht v. Stephens,* 204 Kan. 559, 464 P.2d 258 (1970); *Reeves v. Morris,* 155 Kan. 231, 124 P.2d 488 (1942). The use of equity to enforce covenants restricting the use of property is not absolute, and the right may be lost by laches, waiver or acquiescence in the violation of such restrictions. *N. P. Dodge Corp. v. Calderwood,* 151 Kan. 978, 101 P.2d 883 (1940). In addition, violations of restrictive covenants within the restricted area are relevant, and equitable enforcement

may be denied when there has been a change in conditions so radical in nature as to neutralize the benefits of the restrictions and destroy their purpose. *Clark v. Vaughan,* 131 Kan. 438, 292 Pac. 783 (1930).

"The granting of an injunction is equitable in nature and involves the exercise of judicial discretion. 'Whether injunctive relief will be granted to restrain the violation of a restrictive covenant is a matter within the sound discretion of the trial court to be determined in light of all the facts and circumstances.' Absent manifest abuse of that discretion, an appellate court will not interfere.' [Cites omitted.]

"No hard and fast rule can be laid down as to when changed conditions have defeated the purpose of restrictions, and each case must be decided on the equities of the situation presented. A number of factors may be considered including, but not limited to, the purpose for which the restrictions were imposed, the location of the restriction violations, the type of violations which have occurred, and the unexpired term of the restrictions." [Cites omitted.] *Holmquist v. D-V, Inc.,* 1 Kan. App. 2d 291, 296, 563 P.2d 1112 (1977).

Appellants have a heavy burden, for one who claims abuse of discretion has the burden of proving that contention. *Krueger v. Krueger,* 174 Kan. 249, 255 P.2d 621 (1953). To find the trial court abused its discretion, an appellate court must determine that no reasonable person could take the view adopted by the trial court. *In re Pennington,* 224 Kan. 573, 577, 581 P.2d 812 (1978), *cert. denied* 440 U.S. 929 (1979). If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *Stayton v. Stayton,* 211 Kan. 560, 506 P.2d 1172 (1973).

The restrictive covenants were of record when appellant acquired the lots, and thus appellant is subject to the rule in *South Shore Homes Ass'n v. Holland Holiday's,* 219 Kan. 744, 751, 549 P.2d 1035 (1976), that "[a] person who takes land with notice of restrictions upon it will not in equity and good conscience be permitted to act in violation thereof . . . ."

Ample evidence exists in this case for the trial court to have reached an opposite decision, and had we been called upon to make the initial decision we might well have refused the injunction. However, in view of the trial judge having heard the evidence, we cannot say that when the facts are applied to the law no reasonable person could take the view adopted by the trial court.

The trial court specifically found that plaintiffs had not been guilty of inequitable conduct. We agree, and note that it will not be unduly burdensome upon defendants to enforce the restrictive

covenant and require the removal of the mobile homes. The mobile homes are not permanent structures, but instead rest on concrete blocks and are hooked to the utility lines by means easily disconnected. In addition, no permanent improvements have been made other than the installation of utilities.

Defendants place much emphasis on *N. P. Dodge Corp. v. Calderwood,* 151 Kan. 978, to support their position that plaintiffs are barred from enforcing the restrictive covenant by laches, waiver or acquiescence. We find *Calderwood* distinguishable. Calderwood entered into a contract to purchase three lots in 1934. The contract, which was not recorded, provided for minimum square feet of floor space and other building restrictions. Calderwood built three homes, two of which were occupied by three of the defendants in the case when suit was commenced to enforce the restrictions. The homes were erected prior to a deed to Calderwood having been executed. A deed containing the restrictions was delivered to Calderwood one year prior to suit being filed. The court pointed out that there was no evidence to indicate whether the occupying defendants were owners, lessees or licensees, but that they were nevertheless charged with notice of the restrictions. The court also pointed out that enforcement of the restrictions would require that the houses be removed, and there was evidence that the defendant had knowledge for over three years prior to suit having been filed of the violation of the agreement and had lost his right to enforce the restrictions by laches, waiver or acquiescence. The *Calderwood* case does not show how the plaintiff would have suffered, if at all, if the restrictions were not enforced, while the defendants obviously would have suffered a large loss if they were forced to remove permanent structures.

In *South Shore Homes Ass'n v. Holland Holiday's,* 219 Kan. at 754, the Supreme Court acknowledged that the defense of laches, waiver or acquiescence in actions to enforce restrictive covenants could have the effect of causing a restrictive covenant to become unenforceable, and went on to say:

"This rule, however, is not an absolute one. Mere acquiescence will not bar enforcement so long as a restriction remains of any value. Here there is no evidence to show that the defendants have changed their position or that it would be inequitable to enforce the restrictions. Furthermore, we agree with the trial court that there is no evidence of general and continuous violations of the several restrictions such as would constitute acquiescence or waiver on the part of the plaintiff."

Pictures were introduced in this case showing an expensive, well-maintained home of plaintiffs which would be of greater value if the restrictive covenants were enforced, leaving the restriction against mobile homes still of value to plaintiffs. In the absence of a showing that it would be inequitable to enforce the restrictions, the trial judge did not err in granting the requested relief and ordering the removal of the noncomplying mobile homes.

Affirmed.