(621 P.2d 1024)
No. 51,339

WADE SCHARTZ, THON P. SCHARTZ, WILLIAM E. ESFELD and EDNA
SCHARTZ, *Appellees,* v. D R B & M REAL ESTATE PARTNERSHIP
and TACO TICO, INC., A Corporation, *Appellants.*

Petition for review denied April 29, 1981.

Opinion filed January 16, 1981.

M. John Carpenter, of Great Bend, for appellants.

*Jerry M. Ward,* of Ward & Berscheidt, of Great Bend, for appellees.

Before FOTH, C.J., MEYER, J., and MILLER, District Judge Retired.

MEYER, J.: This is an appeal from an injunction ordered for violation of restrictive covenants of record.

D R B & M Real Estate Partnership purchased a tract of land from William Esfeld, one of the appellees herein, on December 11, 1975, for the purpose of erecting a Taco Tico store. After completion, appellants were notified that the building encroached 24 feet into an area restricted by a setback requirement contained in a covenant of record. A mandatory injunction was issued by the trial court for removal of the structure.

The covenant which was admittedly violated states:

"No obstruction or buildings of any kind, either permanent or temporary, except signs, sign boards or bill boards, less than eight feet in width attached to a building shall be erected, constructed or maintained less than eighty feet South of the North section line of the Northwest Quarter (NW ¼) of Section Thirty-Two (32), Township Nineteen South (19S), Range Thirteen West (13W) in Barton County, Kansas."

The purpose of the covenant in the subdivision was for appearance and to assure no building obstructed the view of any others.

There are some other violations besides the Taco Tico store in the area. There is a fence put in by Everitt Lumber which encroaches in the restricted area and also an Inland Office structure which encroaches into the area. This building, however, is temporary in nature.

The appellees are William Esfeld, Wade Schartz, Thon Schartz, and Edna Schartz. Wade and Thon Schartz and Esfeld own the building immediately adjacent to the Taco Tico store. Edna Schartz owns property near appellant's Taco Tico building. In December, 1975, appellee Wade Schartz heard about the sale of property to Taco Tico, and informed the agent for the seller about the restrictions.

In February, 1976, appellee William Esfeld was at the location of the building when the footings were being dug for the building. At that time he said nothing to Mr. Bill Green, who was a member of the partnership which owned the building, about the covenants and restrictions.

In mid-March, Wade Schartz became aware that the building might be encroaching on the setback restrictions and called William Esfeld to find out the name of the owner. Mr. Esfeld told Schartz he would check into the matter. Esfeld talked to the contractor on the site and the contractor told him that the other covenants were overridden by whatever the city said they could do and that the city setback requirements would take precedent over any other covenant. Esfeld so informed Wade Schartz. Schartz did nothing until he received a call from his tenant who managed the furniture store on the lot adjacent to the Taco Tico store. At that time he went out to the site. He became frustrated and went to see his attorney. He then went to the site and measured and found that the building was built within the 80-foot restricted area. The attorney took a couple of weeks to check records and May 11, 1976, a letter was sent notifying Green

of the setback requirements. The building had been completed May 3, 1976.

Green testified the letter was the first information he had about the covenants. He had relied upon the real estate agent's reply to his question about setback requirements. The agent had told Green about city setback requirements, but had not mentioned the covenants. The agent had told Green to check the abstract.

Appellants assert that the appellees were barred from seeking an injunction by laches, estoppel, waiver and abandonment. Their main argument is that the trial court's findings of fact were inconsistent with the conclusions of law. The trial court specifically found that appellee William Esfeld was guilty of laches. It also found that Edna Schartz did not come into the court with clean hands in that she had violated the restrictions. The court also noted other violations of long standing. The court, however, entered the injunction for removal of the building.

The cost of construction of the building was $55,000 and site improvements cost an additional $9,000. Testimony established that the only practical way to comply with the injunction would be to remove the structure entirely and replace it with a different building at a cost of $62,000.

Appellants do not dispute that they violated the covenant nor do they dispute that the restrictive covenant was appropriately filed, noted in the abstract of title, and imparted constructive notice of the covenant.

"The enforceability of restrictive covenants has its origin in common law and has long been recognized in the State of Kansas. *Tulk v. Moxhay,* 2 Ph. 774, 41 Eng. Rep. 1143 (1848); *Godfrey v. Black,* 39 Kan. 193, 17 Pac. 849 (1888). Restrictions or equitable servitudes are based on the equitable principle of notice whereby a person who takes land with notice of a restriction upon it will not be permitted to act in violation of it. *Hecht v. Stephens,* 204 Kan. 559, 464 P.2d 258 (1970); *Reeves v. Morris,* 155 Kan. 231, 124 P.2d 488 (1942)." *McColm v. Stegman,* 3 Kan. App. 2d 416, 419, 596 P.2d 167 (1979).

Further,

"Such restrictions will be enforced by injunction and in a proper case a mandatory injunction will lie for the removal of buildings and structures in breach of such restrictions." *South Shore Homes Ass'n v. Holland Holiday's,* 219 Kan. 744, 751, 549 P.2d 1035 (1976).

To overturn the trial court's granting of an injunction, this court would have to find that it abused its discretion.

"Whether injunctive relief will be granted to restrain the violation of a restrictive covenant is a matter within the sound discretion of the trial court and is to be

determined in light of all the facts and circumstances. Absent manifest abuse of that discretion, the appellate court will not interfere." *McColm v. Stegman,* 3 Kan. App. 2d 416, Syl. ¶ 1.

Appellants' main contention is that the trial court should have refused to grant the injunction as the right to enforce the restrictive covenant was lost by laches, waiver or acquiescence.

"The rule that the right to enforce a restrictive covenant may be lost by laches, waiver, or acquiescence is not an absolute one. Mere acquiescence will not bar enforcement so long as a restriction remains of any value or absent a showing that it would be inequitable to enforce the restriction." *South Shore Homes,* 219 Kan. 744, Syl. ¶ 5.

Since appellants have suffered great loss through enforcement of this restriction, they are in a position to argue that appellees' conduct should be scrutinized. However, more than a mere loss to the appellants is necessary to sustain their burden to show inequitable conduct on the part of appellees which would bar issuance of an injunction. We will examine each alleged misconduct in order to determine whether appellants have met this burden.

The trial court found that two of the four appellees did not come into court with clean hands. The trial court was correct in denying relief to appellants on the ground of either the clean hands or laches doctrines, since those doctrines were not applicable to all of the appellees. The evidence here is sufficient to support the trial court's conclusions in this regard. See *N. P. Dodge Corp. v. Calderwood,* 151 Kan. 978, 101 P.2d 883 (1940). As to the effect of negative findings, see *Highland Lumber Co., Inc. v. Knudson,* 219 Kan. 366, Syl. ¶ 5, 548 P.2d 719 (1976). Neither does appellees' failure to file suit against other violators constitute waiver, abandonment or estoppel. See *Burns v. Terzian,* 233 Mich. 627, 631, 207 N. W. 913 (1926), where the court said:

"[E]ven after one or more breaches, equity will grant relief if the restriction can be shown to be of value to complainant, and such breaches have not resulted in a subversion of the original scheme of development resulting in a substantial, if not entire, change in the neighborhood." (Citing from *Misch v. Lehman,* 178 Mich. 225, 228, 144 N.W. 556 [1913].)

The prior violations now complained of by appellants were of a very minor nature, and of a type which rendered them easily removed—such as a fence and a temporary structure which was

movable and had in fact been moved several times. Certainly they were not such as to *result in a subversion of the original scheme* of development in the neighborhood. Since we are here involved with general commercial property where visibility is a valuable asset, a violation of the restriction, it can be assumed, will constitute a considerable financial detriment to other properties along the street.

Considering the large cost to appellant herein, the solution is a troublesome one. We have been cited no Kansas case, and have found none, where a defendant in a case such as this has suffered such a large loss. Nevertheless, in considering appellees' actions, while we conclude they could have been more diligent, we cannot say they were unreasonable in the actions they took. It was not an abuse of discretion for the trial court to grant them redress. Appellants were primarily responsible to ensure that they did not violate restrictions, and are responsible for checking the records. On balance, we conclude appellees are entitled, by law, to prevail herein.

Affirmed.