No. 57,608
No. 58,231

E. Dean Kennedy and Cheryl L. Kennedy; Paul W. Diamond and O. Patricia Diamond; Donald K. Spaeny and Alberta J. Spaeny; and Astle Realty, Inc., *Appellees*, v. Classic Designs, Inc., a Kansas corporation, *Appellant*, and Valley Federal Savings and Loan Association of Hutchinson, *Intervenor/Appellant*.

(722 P.2d 504)

Opinion filed July 18, 1986.

*Dennis O. Smith*, of Hutchinson, argued the cause and was on the brief for appellant Classic Designs, Inc.

*Phillip Frick*, of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause and *Robert L. Howard* and *Laura B. Shaneyfelt*, of the same firm, were on the brief for intervenor/appellant Valley Federal Savings and Loan Association of Hutchinson.

*Joseph L. McCarville III*, of Rauh, Thorne, Childs & O'Sullivan, of Hutchinson, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

Holmes, J.: These are consolidated appeals by defendant Classic Designs, Inc., (Classic Designs) and defendant/intervenor Valley Federal Savings and Loan Association (Valley Federal) from the granting of temporary and permanent injunctions enjoining the appellants from construction of certain types of homes in a Hutchinson subdivision. Appellees are owners of various lots in the subdivision. Case No. 57,608 is the appeal

from the temporary injunction granted September 6, 1984, and Case No. 58,231 is the appeal from the permanent injunction granted April 25, 1985.

The controlling facts are not in dispute. In 1979, Richard W. Dillon and Carolyn A. Dillon platted Heritage Estates I, (Heritage Estates or the subdivision) an addition to the City of Hutchinson, Reno County, Kansas, containing thirty-six residential building lots. In the fall of 1979 the property was conveyed to Joe and Marjorie Astle. The Dillons, as a part of the platting of the subdivision, executed "Reservations, Restrictions and Protective Covenants" covering the entire addition. The actual platting and preparation of the restrictive covenants was done by Joe Astle and his attorney preparatory to a purchase of the property. On November 9, 1979, the Astles conveyed the property to Custom Homes, Inc., their family corporation. The acquisition of the thirty-six lots was financed by Valley Federal. During the next three years Custom Homes sold only three lots upon which single family homes were constructed. The Kennedys, the Diamonds, and the Spaenys, appellees, were the purchasers of the three lots. In 1982 the remaining thirty-three lots were conveyed by Custom Homes to Valley Federal to avoid foreclosure of the mortgage held by Valley Federal. Since that time the appellee Astle Realty, Inc., another corporation of Joe and Marjorie Astle, has acquired one of the lots from Valley Federal and apparently the Astles live in a home erected on that lot.

The appellant Classic Designs is engaged in the business of engineering and constructing modular homes and commercial buildings. Component parts, or modules, are produced at the company facility in Hutchinson, and then transported by truck to the property site for integration with other component parts which, along with other on-site construction, results in a finished or completed building.

On August 1, 1984, Classic Designs purchased a lot in the subdivision from Valley Federal and obtained a one-year option to buy four additional lots. Prior to purchasing the real estate, Classic Designs consulted with and obtained approval from Valley Federal for the construction of a modular home on the site. Classic Designs immediately went to work preparing a foundation and basement for the house. On August 20, 1984, the

first two components of the living quarters and a paneled garage were transported to the Heritage Estates lot. The construction aroused the attention of Joe Astle and Donald Spaeny, who complained about the construction that was underway. A meeting on August 21, 1984, with Valley Federal officers proved unsuccessful in resolving the complaints regarding the construction. Suit was filed against Classic Designs on August 22, 1984, seeking injunctive relief to halt construction and a ruling that the restrictive covenants prohibited construction of a modular home. The trial court issued a temporary restraining order on August 22, 1984, and construction ceased the next day.

On the 6th day of September, 1984, the motion for a temporary injunction was sustained following a lengthy hearing lasting nearly three days. The trial court found that the house being constructed by Classic Designs violated a provision of the restrictive covenants which provided "no building shall be moved into the Addition". The court's order stated:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the Defendant, Classic Designs, Inc., a Kansas Corporation, is hereby enjoined from doing any work towards completion of the house on Lot 9, Block D, Replat of Heritage Estates I, a Subdivision of Hutchinson, Kansas, or from moving a building in or placing a building upon any other lot in Heritage Estates I, a Subdivision of Hutchinson, Kansas.

"IT IS FURTHER BY THE COURT ORDERED, ADJUDGED AND DECREED that the Plaintiffs shall give a Bond in the amount of Ten Thousand Dollars ($10,000.00) conditioned that they will abide by the decision which may be made herein and that they will pay all sums of money and costs that shall be dissolved [sic] in whole or in part together with sufficient sureties as may be approved by the Court, which Bond has been filed herein and is hereby approved.

"IT IS FURTHER BY THE COURT ORDERED, ADJUDGED AND DECREED that this Order and Decree shall continue in effect until the Court's final decision in the above entitled cause of action."

Thereafter Valley Federal was permitted to intervene in the case. On November 6, 1984, motions to reconsider the court's rulings were overruled.

Classic Designs and Valley Federal appealed the trial court's order granting a temporary injunction. The Court of Appeals, in Case No. 57,608, stayed the appeal proceedings pending a determination of whether a permanent injunction would be issued. At a pretrial conference on April 25, 1985, the parties agreed no further evidence would be presented and the court then rendered a final judgment granting a permanent injunction. Case

No. 58,231 is the appeal from the judgment granting the permanent injunction. The two cases were consolidated in the Court of Appeals and subsequently transferred to the Supreme Court.

Appellants attack the trial court's interpretation of the restrictive covenants, assert the plans and proposed construction of Classic Designs were approved by the architectural control committee, and attack the temporary injunction on the additional ground of an illegal and insufficient bond.

The restrictive covenant which is the subject of this litigation provides:

"2. There shall not exist on any lot at any time more than one residence. No trailer, basements, tent, shack, garage, barn, temporary building, guest house or other outbuilding erected in the Addition shall at any time be used as a residence, temporarily or permanently, nor shall any structure of temporary character be used as a residence. No trailer, tent, shack, barn, temporary building, guest house or outbuilding shall be erected on any of the lots in the subdivision without approval in writing from the Architectural Control Committee hereinafter designated; and *no building shall be moved into the Addition except such as shall be used temporarily in connection with the construction of a permanent residence, or structure upon any lot in the Addition.*" (Emphasis added.)

The appellees claim that construction of a modular home is a violation of the above covenant. They contend that, since the component units or modules are substantially completed in the factory, transporting the units onto the property site for further assembly entails moving a building into the addition. Appellees claim that such modular construction is prohibited by the italicized language in the above covenant.

The appellants, on the other hand, maintain that the modular home is not a building prior to its on-site assembly. Classic Designs argues that its decision to utilize factory-built components in the construction of the home in Heritage Estates I does not violate the restrictive covenant. Additional facts will be developed as necessary for the issues on appeal.

The restrictive covenants applying to this subdivision are similar to many used throughout residential development projects. In the briefs and arguments before this court, the parties repeatedly refer to the isolated language "no building shall be moved into the Addition." It is a fundamental rule in construing a written instrument that language used anywhere in the instrument should be considered and construed in harmony with all provisions and not in isolation. *Heyen v. Hartnett*, 235 Kan.

117, 679 P.2d 1152 (1984). Under the section "Use of Land" in the covenants, the first paragraph provides all lots shall be residential lots. It also states that no structures shall be "erected, altered, *placed* or permitted" other than single family dwelling homes, although it includes a provision for an exception to allow duplexes on certain lots. The third and fourth paragraphs set certain square footage requirements. Subsequent paragraphs cover and restrict construction of detached structures, and control certain activities on the premises, building setback lines, handling of trash and refuse, removal of earth, use of signs and advertising, screening of certain areas and structures, alterations, and so on. The next section of the covenants provides for the establishment of an architectural control committee whose approval appears to be necessary for almost any proposed construction and use of the properties and which also is granted broad power to "make exceptions to these restrictions, reservations and protective covenants" as it deems necessary and proper. Thus, it appears obvious that the original developers sought to insure a quality development of residential homes. With this background, we turn to the principal issue of whether the use of modular construction techniques, as contemplated by the appellants, violates the restrictive covenants.

At the outset it is necessary to distinguish between three different types of dwellings; mobile homes, "stick-built" homes, and modular homes. K.S.A. 79-340 defines a mobile home as follows:

"[T]he term 'mobile home' means a factory-built structure or structures more than eight feet in width or more than 36 feet in length, equipped with the necessary service connections and made so as to be readily movable as a unit or units on its own running gear and designed to be used as a dwelling unit or units."

A stick-built home, in the traditional sense, is one that is constructed completely on the premises from various raw materials including lumber, brick, cement, pipe, wire, roofing materials, etc. It has been noted that in recent years the construction industry has recognized the utility in using some preformed or prebuilt components which are incorporated into what are still considered stick-built structures. See *Mathis v. Wallace*, 553 S.W.2d 236 (Tex. Civ. App. 1977). These preformed components are manufactured off site and then transported to the construction site to be integrated into the home.

The third type of residence, modular homes, is the subject of the present litigation. This type of housing, whether called modular, prebuilt, prefabricated, preengineered, or something else, utilizes preconstructed components manufactured in a factory. The finished components are transported to the construction site and assembled on a permanent foundation. One court, referring to the Texas Manufactured Housing Standards Act, defined this type of dwelling as follows:

"'Modular home' means a dwelling that is manufactured in two or more modules at a location other than the home site and which is designed to be used as a residence when the modules are transported to the home site, and the modules are joined together and installed on a permanent foundation system. The term includes the plumbing, heating, air conditioning and electrical systems contained in the structure . . . ." *Ussery Investments v. Canon & Carpenter, Inc.*, 663 S.W.2d 591, 594 (Tex. Civ. App. 1983).

In the present case the appellee landowners brought suit to enjoin Classic Designs from constructing a modular home on its lot in Heritage Estates. Restrictive covenants have long been recognized in Kansas. A person who takes land with notice of restrictions upon it will not, in equity and good conscience, be permitted to act in violation thereof. Such restrictions are enforceable through the equitable remedy of injunction. *South Shore Homes Ass'n v. Holland Holiday's*, 219 Kan. 744, 751, 549 P.2d 1035 (1976).

The crux of the issue here is whether the component parts which were manufactured off site constitute a "building" within the meaning of the covenant. This proposed home was designed by a Hutchinson architectural firm for the specific lot owned by Classic Designs. The components are built in an environmentally controlled atmosphere and, after being transported to the property, are assembled at the site. In the instant case the home consisted of three principal components. Two of the components made up the living portion while the third consisted of the garage. The two components comprising the living quarters were to be permanently attached to the previously constructed foundation and basement, and then the garage was to be attached, making one complete structure or building. After the three components are attached to the foundation and each other, numerous additional tasks are required to complete the residence. The roof must be completed, plumbing and electrical wiring finished, the air conditioning and heating systems installed, the

fireplace completed, carpet laid, and numerous other tasks done before the structure is complete. On the outside of the house the driveway and sidewalk were to be poured, brick was to be laid on three sides of the house, and the lot was to be landscaped.

The evidence disclosed that materials comparable or superior to those used in appellees' homes were utilized in the Classic Design components. The completed property would have an appraised value comparable to or in excess of that of the homes of the appellees. Appellees did not contend that the finished property would be inferior. Their principal objection was their opinion that the public considers modular construction to be inferior to stick-built and therefore the use of such construction would lower appellees' property values. Mr. Astle did not like the aesthetics of some of the interior cabinets, light fixtures, and the fireplace, although it appears this was based upon his personal preferences and not on any lack of quality.

It does not appear Kansas courts have previously interpreted the meaning of the word "building" in the context it appears in this case. The words "building" and "structure" are often considered synonymous. While cases involving criminal convictions have recognized that a granary, *State v. Groning*, 33 Kan. 18, 5 Pac. 446 (1885); a buggy house, *State v. Garrison*, 52 Kan. 180, 34 Pac. 751 (1893); a chicken house, *State v. Poole*, 65 Kan. 713, 70 Pac. 637 (1902); and a cave, *State v. Sanders*, 81 Kan. 836, 106 Pac. 1029 (1910), may be buildings or structures sufficient to support a burglary conviction, these cases are not on point in the present case. A building has been variously defined as an "edifice," a "structure," a "fabric built or constructed," and "[t]hat which is built," and a structure has been defined as, "[t]hat which is built or constructed; an edifice or building of any kind." Black's Law Dictionary 244, 1592 (4th ed. rev. 1968). One court has defined the word "building" to mean an edifice, designed to stand more or less permanently and covering a space of land, for use as a dwelling, storehouse, factory, shelter for beasts, or some other useful purpose. *Bennett v. O'Maley Tractor Co.*, 209 Mo. App. 619, 238 S.W. 144 (1922). Another court has held that the word "building" does not embrace parts or segments of a building or structure. *Vogel v. Supply Co.*, 277 N.C. 119, 132, 177 S.E.2d 273 (1970). From these definitions it would appear that use of the word "building" clearly imports some sort of as-

sembled or completed structure, rather than various component parts that are intended to be attached together to comprise a finished product. We think it is clear that the restrictive covenant relied upon by appellees contemplated a completed building rather than a method of construction. When the restrictive covenants are considered as a whole, it would appear the intent is to prevent moving used or inferior buildings or structures onto the property as opposed to new construction whether stick-built or modular.

In *Ussery Investments v. Canon & Carpenter, Inc.*, 663 S.W.2d 591, the court was called on to determine whether a modular home was a "structure" within the meaning of a subdivision restriction. The restriction provided:

"2. That no 'structure' shall be moved onto any lot, but all buildings erected on said lots shall be of new construction."

The plaintiffs, adjacent lot owners, obtained an injunction prohibiting construction of modular homes in the development. The court reviewed the construction technique involved, noting that the home was delivered in two components or "modules," assembled, and attached to the cement foundation. The court observed that after the pieces are joined, the wiring and plumbing is hooked up; heating and air conditioning is installed; the interior is finished, along with carpet and painting; the porch and garage are constructed; outside brick is laid; and the driveway is poured. All of this led the court to hold that the construction of a modular home did not violate the subdivision restriction. The court stated:

"We agree with the appellants that the restrictions prohibiting any 'structure' from being brought onto a lot do not preclude the appellants' modular home construction technique. The term 'structure,' as used in the restrictions, clearly means a whole, pre-existing, and habitable building, and its clear purpose is to require that only newly-erected, permanent buildings be placed on the subdivision lots. . . . The restrictions did not require that the structure be 'built in place' or otherwise indicate a prohibition against modular construction . . . and we, therefore, perceive no impediment to that modular home system of erecting a new structure on the premises. In *Mathis v. Wallace*, 553 S.W.2d 236 (Tex. Civ. App.-Austin 1977, no writ), the restrictive covenant provided that no building or structure shall be moved upon the premises. The court held this covenant was not violated by having a house partially pre-assembled off the premises, then cut in half, and each half being moved separately and set down on previously constructed concrete foundation piers. In the case at bar, there is even more reason than in *Mathis* to conclude that the modular homes were not prohibited

'structures.' Here the separate elements were never joined together to form a structure until they were permanently anchored to the foundation at the building site. Until all of the component elements comprising the basic structure were actually assembled, the unit could not be considered a 'structure' within the meaning of the restrictive covenant." 663 S.W.2d at 594-95.

In *Werner v. Sofios Constr. Co.*, 16 Ohio Op. 2d 365, 176 N.E.2d 870 (1961), the court held that a restriction which read, "No house already erected shall be moved onto said property, nor shall any prefabricated house be erected on said property" did not prohibit the construction of a house manufactured in 14 numbered sections and transported to the site for assembly. The court apparently drew a distinction between homes designed for a particular location and those that are mass produced, noting that clearly the latter are "prefabricated." While the court's holding in *Werner* is somewhat unclear, some of its reasoning is persuasive.

"This court finds nothing sacred about on the site construction . . . so long as components of a particular home constructed away from the site are of the same or better quality materials and workmanship. Use of the same workmen to shop build components very often results in better finished quality due to the more accurate machinery available, more comfortable working conditions, and the higher degree of control and supervision possible. . . .

"To require a builder to construct all component parts on the site solely to avoid the restriction involved here would be placing an unreasonable and arbitrary interpretation on the words 'prefabricated house.' " 16 Ohio Op. 2d at 367.

In *Billings v. Shrewsbury*, _____ W. Va. _____, 294 S.E.2d 267 (1982), the court was faced with the question of whether a factory-built home consisting of two components transported to and assembled on the building site violated a covenant prohibiting mobile homes. In finding the proposed construction did not constitute a mobile home, the court stated:

"The center cap shingles, ventilation and heating systems and portions of the siding were not added until the major prefabricated sectional components had been joined together. Furthermore, the Shrewsbury residence is constructed very much like a coventional stick-built home. Its walls are built of two-by-fours set on 16-inch centers. The roof trusses are built with two-by-twos which are also set on 16-inch centers and the outside walls are covered with lap siding. We also note that the Shrewsbury home is aesthetically acceptable. Photographs admitted into evidence show that this home had the appearance of a conventional, single-family dwelling and compared favorably to other homes in the subdivision." p. 269.

Appellees contend these cases are all distinguishable from the

facts before the court and in some ways they are. However, we find the rationale of the Texas cases and others cited persuasive. Appellees have not cited any authority or cases supporting their position that the proposed modular construction would violate the present covenants and our research has disclosed none.

The use of modular construction is a modern building technique recognized and approved as efficient and satisfactory. It in no way resembles the usual concept of the mobile home and has not been shown to be inferior to stick-built or total on-site construction. The use of modular construction is not a recent innovation and existed long before the restrictive covenants in this case were prepared. If it had been the intent to restrict this type of construction in the subdivision, it would have been very simple to clearly include such a prohibition in the restrictive covenants. The covenants go into elaborate detail limiting the use of the property and providing numerous safeguards for the lot owners. Nowhere is there any indication that use of modular construction is prohibited in building the anticipated private dwelling houses and supporting structures. The construction of the proposed dwelling by utilizing new components built off the premises and then moving those components onto the lot and assembling them into a completed building does not constitute moving a building into the addition. Considering the overall intent of the restrictive covenants, we hold that under the facts of this case the trial court erred in determining that the Classic Design's construction methods and the proposed finished building fell within the prohibition that "no building shall be moved into the addition."

As the identical evidence was considered by the court in granting both the temporary and permanent injunctions, we hold both injunctions were erroneously issued. In view of the result reached herein, it is not necessary for us to consider the other issues asserted by appellants.

The judgments in both cases are reversed and the cases are remanded with directions to dissolve the injunctions and for further proceedings not inconsistent with this opinion.