(18 P.3d 286)
No. 83,796

BOARD OF COUNTY COMMISSIONERS OF RENO COUNTY, KANSAS,
ACTING AS THE GOVERNING BODY OF RENO COUNTY WATER
DISTRICT NO. 8, *Appellee*, v. ASSET MANAGEMENT AND
MARKETING L.L.C. and RICHARD DOWNEY, *Appellants*.
DWIGHT ENGELLAND, PATRICIA ENGELLAND, JIMMIE D.
PITZER, JR., A.L. YOUNG, AND ALL PERSONS SIMILARLY
SITUATED, *Defendants*.

Opinion filed January 26, 2001.

*John A. O'Leary* and *Todd W. Davidson,* of Hampton & Royce, L.C., of Salina, for appellants.

*Joseph O'Sullivan,* Reno County Counselor, of Leslie, O'Sullivan, McCarville & Brown, of Hutchinson, for appellee.

Before MARQUARDT, P.J., GREEN, J., and BUCHELE, S.J.

MARQUARDT, J.: Asset Management and Marketing L.L.C. (Asset) and Richard Downey appeal the trial court's decision that allowed the Board of County Commissioners of Reno County, Kansas, (County) to violate Paganica Peaks No. 1 (Paganica) subdivision restrictive covenants and construct a water tower on one of the lots in the subdivision. We affirm.

The Paganica subdivision was created in 1977. In 1979, Reno County Water District No. 8 was established with a series of booster pumps, approximately 8 miles of pipe, and three water wells that fill a 60,000 gallon in-ground well. The size of the pipes, elevation changes, and the area covered by the pumps limited the water flow to the subdivision.

At present, there are 82 residences and 5 commercial customers relying on the water system. The system was designed to provide 50 gallons of water per capita per day, for a total usage of 27 million gallons per year and to serve approximately 1500 people. In 1998, the district pumped over 20 million gallons of water, for a per capita per day usage of 184 gallons. Currently, at peak usage times, the demand for water may exceed the capacity of the pump station and cause the water pressure to drop. If the subdivision is filled to full capacity, the water needs will exceed the·system's capacity by four times.

In May 1997, BG Consultants, Inc. (BG) completed an engineering feasibility study of the water system for the County and suggested four improvement options. The only option that did not have severe limitations was to construct a water tower.

In July 1998, the County acquired land in the subdivision by warranty deed. The land was subject to easements and a restrictive covenant which limited use of the land to single family homes no higher than two stories. Exceptions to the restrictions had to have prior approval of the Architectural Control Committee. The land was zoned for residential use only; however, the County rezoned the land for heavy industrial use.

After several public hearings, in December 1998, the County adopted a resolution which authorized the construction of the wa-

ter tower. Asset voiced concerns about placement of the water tower and stated that it believed it had standing to obtain an injunction to stop construction of the water tower. In December 1998, the County filed a petition for declaratory judgment. The County argued that construction of the water tower did not violate the restrictive covenants and that an injunction would cause economic loss. Appellants filed general denial answers and counterclaimed for an injunction to prohibit construction of the water tower. Appellants claimed irreparable injury to the value of their land should the water tower project be allowed to continue.

After an evidentiary hearing, the trial court found that construction of a water tower was clearly prohibited by the restrictions. However, the trial court considered the matter of the injunction in light of equitable principles. The trial court found that "[t]he present system will not handle peak usage now and adequate fire protection for the area is extremely questionable. The trial court ruled that "grant[ing] an injunction in this case would not be equitable or just. The public interest in this case will be best served if the proposed water tower is constructed as planned." The trial court stated that the restrictive covenant did not act equitably and did not provide any benefit or substantial value to either party. Appellants' request for an injunction was denied. Appellants appeal the trial court's ruling.

On appeal, appellants argue that the trial court's findings of fact and conclusions of law are not specific enough to inform the parties of their current and future legal rights. Appellants believe that the trial court failed to address whether: (1) the County had the right to rezone the property, (2) the County could acquire the lot by deed instead of by eminent domain, and (3) the County should be treated as a public or private entity. These issues were not part of the declaratory judgment motion.

K.S.A. 60-1701 governs declaratory judgment actions:

"Courts of record within their respective jurisdictions shall have power to declare the rights, status, and other legal relations whether or not further relief is, or could be sought. No action or proceedings shall be dismissed or stayed for the sole reason that only declaratory relief has been sought. The declaratory [judg-

ment] may be either affirmative or negative in nature; and such declarations shall have the force and effect of a final judgment."

The function of a declaratory judgment action pursuant to K.S.A. 60-1701 is to provide a speedy and flexible method for determining the rights and obligations of parties in cases of actual controversy where there is actual antagonistic assertion and denial of right.

In its petition, the County asked the trial court for a declaratory judgment as to whether the restrictive covenants of Paganica subdivision prohibited the construction of a water tower. The trial court ruled: "The use of the lot suggested by the County is clearly prohibited by the restrictions contained in the plat." It also ruled that "[t]he restrictive covenant sought to be enforced does not act equitably in this instance and serves no benefit or substantial value to either party."

Appellants fault the trial court for not ruling on whether the County could rezone the property or whether the County could acquire the property by purchase rather than by eminent domain. However, these issues were not part of the County's petition for declaratory judgment. The County asked a specific question, and the trial court provided an appropriately specific answer. The trial court had no obligation to rule on issues not raised. In general, issues not raised before the trial court cannot be raised on appeal. *Lindsey v. Miami County National Bank*, 267 Kan. 685, 690, 984 P.2d 719 (1999). We find no error in the trial court's decision.

Appellants claim that when the County rezoned the property, it showed questionable motives in direct violation of Kansas case law. They argue that the government cannot rezone property and ignore an existing restrictive covenant.

Zoning is regulated by statute and/or ordinance. Interpretation of a statute or ordinance is a question of law, and is subject to unlimited review by this court. *State v. Patterson*, 25 Kan. App. 2d 245, 247, 963 P.2d 436, *rev. denied* 265 Kan. 888 (1998). Although appellants did mention the issue of zoning in their trial pleadings and brief, there was no mention of the zoning controversy at the evidentiary hearing held on this matter. They did not give the trial court the chance to consider the ramifications of the County's re-

zoning of the property. Therefore, the trial court did not rule on the issues, and, thus, we do not have any trial court ruling to review.

We also note that appellants have failed to follow the statutory procedure to contest a zoning decision. K.S.A. 12-759(d) states that any person aggrieved by the zoning decision of any city or county should appeal the decision to the local board of zoning appeals. If a citizen is still aggrieved, he or she may take an appeal to the district court within 30 days of the final decision of the city or county. See K.S.A. 12-760(a). There is no evidence in the record on appeal to show that appellants pursued these remedies. The issue of zoning does not properly belong in this appeal.

We note that there is some confusion as to what appellants are actually appealing. In their appellate brief, appellants ask this court to find that the trial court erred in allowing the County to violate the restrictive covenants. They also assign error to the trial court's refusal to grant their request for an injunction. However, in their reply brief, appellants state that they are appealing from the declaratory judgment issued by the trial court. Statements made in the reply brief indicate that appellants believe the trial court did not rule on the issue of the injunction.

The memorandum opinion from the trial court clearly states that the declaratory judgment was granted and appellants' request for injunction was denied.

Essentially, appellants argue that the County should be treated like any private party who purchases land subject to restrictive covenants. They contend that the County is trying to benefit from ownership of the lot without suffering the burdens of compliance with the restrictive covenants. Appellants claim that if the County wishes to violate the restrictive covenants, it should exercise its power of eminent domain in order to acquire land. They believe an injunction is appropriate because inverse condemnation is not a true remedy.

The granting of injunctive relief involves the exercise of judicial discretion and will be reviewed by this court for abuse of discretion. A party that asserts abuse of discretion bears the burden of proving it. *Kansas East Conf. of the United Methodist Church v. Bethany Med. Ctr.*, 266 Kan. 366, 377-78, 969 P.2d 859 (1998).

An injunction is an order to do or refrain from doing a particular act. K.S.A. 60-901. An injunction is an equitable remedy designed to prevent irreparable injury by prohibiting or commanding certain acts. 42 Am. Jur. 2d, Injunctions § 1, p. 550-51. Injunction is not appropriate if a remedy at law can furnish the injured party with the full relief to which he or she is entitled. 42 Am. Jur. 2d, Injunctions § 1, p. 551.

To obtain injunctive relief, the movant must show: (1) there is a reasonable probability of irreparable future injury to the movant; (2) an action at law will not provide an adequate remedy; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the injunction, if issued, would not be adverse to the public interest. *Sampel v. Balbernie*, 20 Kan. App. 2d 527, 530-31, 889 P.2d 804 (1995).

Appellants claim that construction of a water tower will cause irreparable injury by greatly diminishing the value of its property. However, at the evidentiary hearing, an owner of a lot adjacent to the proposed water tower testified that he was going to construct a residence on his lot and did not believe that the proposed water tower would have any impact on his property value. Radine Shafer Downey, who is the president of Asset and a real estate consultant and developer, testified that she lost two sales when prospective buyers learned of the proposed water tower. Downey admitted that she did not have a written agreement for these sales.

The Paganica homeowner's association approached the County in 1997 and asked it to remedy the chronic low water pressure. They were especially concerned that the current water system was grossly inadequate for fire protection.

An injunction will only issue if the applicant is threatened with irreparable injury. See *Sampel*, 20 Kan. App. 2d at 531. Appellants presented no evidence to support their claim of irreparable harm. We find no abuse of the trial court's discretion as to this issue.

Appellants must next prove that an action at law will not provide an adequate remedy. *Sampel*, 20 Kan. App. 2d at 529-530. Where there is full, complete, and adequate remedy at law through recovery of calculable money damages, the injury is not irreparable

and equity will not apply the extraordinary remedy of injunction. *Wichita Wire, Inc. v. Lenox*, 11 Kan. App. 2d 459, Syl. ¶ 10, 726 P.2d 287 (1986).

The County suggests that appellants could be compensated through an inverse condemnation action. See *Sanders v. State Highway Commission*, 211 Kan. 776, 779-80, 508 P.2d 981 (1973). Inverse condemnation is an action to obtain compensation for the taking of private property by government which is initiated by the person having an interest in the private property. *Deisher v. Kansas Dept. of Transportation*, 264 Kan. 762, 771-72, 958 P.2d 656 (1998).

There is nothing which would prevent appellants from initiating an inverse condemnation proceeding. Appellants claim that it is not a full remedy because it would be unfair to force private landowners to suffer the burden and expense of filing an inverse condemnation claim. However, the law does not require that landowners be given the most expedient remedy.

The remaining two factors identified above which might warrant obtaining an injunction involve questions of public interest. See *Sampel*, 20 Kan. App. 2d at 530-31. The study from BG noted that the current water system is inadequate to handle the proposed growth for the subdivision. In addition, the system is currently inadequate for providing fire protection. Even appellants agree that the current water system is inadequate. These factors weigh in favor of constructing the water tower. The trial court was not in error in rendering its decision.

Affirmed.