(75 P.3d 278)
No. 89,410

PERSIMMON HILL FIRST HOMES ASSOCIATION, *Appellant*, v.
HOWARD and CARRIE LONSDALE, *Appellees*.

Opinion filed August 29, 2003.

*Timothy J. Sear* and *Kevin J. Breer*, of Polsinelli Shalton & Welte, A Professional Corporation, of Overland Park, for appellant.

No appearance by appellees.

Before JOHNSON, P.J., GREENE, J., and DAVID W. KENNEDY, District Judge, assigned.

GREENE, J.: Persimmon Hill First Homes Association (Association) appeals from the district court's denial of its motion for a permanent mandatory injunction against homeowners Howard and Carrie Lonsdale (Londales) to enforce a restrictive covenant prohibiting fences absent Association approval, and in no event fences exceeding 4 feet in height if on a boundary line. The district court denied the requested injunctive relief solely due to a perceived failure by the Association to demonstrate irreparable injury. We reverse.

*Factual and Procedural Overview*

In July 1978, the developer of Persimmon Hill subdivision in Johnson County, Kansas, filed a declaration of restrictions applicable to all property in the subdivision containing, *inter alia,* the following covenants and provisions:

"No fence of any kind or description shall be erected on any lot unless and until the location, height and material to be used have been approved in writing by the Developer. . . . It is expressly provided, however, that no fence to be constructed along the boundary line of any lot shall exceed four (4) feet in height.

. . . .

"[T]he Developer and the owner or owners from time to time of any of the lots hereby restricted, shall have the right to sue for and obtain an injunction, prohibitive or mandatory, to prevent the breach of or to enforce the observance of the restrictions above set forth . . . ."

The developer filed contemporaneously a declaration establishing the Association and delegating the nonexclusive right to enforce the restrictive covenants. Both declarations expressly provided that the covenants would "run with the land."

The Lonsdales purchased their home in the subdivision in March 1997. Mr. Lonsdale acknowledged that he was "sure that

[he] was" aware upon purchase that the property was subject to certain "deed restrictions." Sometime prior to June 2001, and absent any request for approval or notification to the Association, the Lonsdales erected a fence around a portion of their property in excess of 4 feet in height. They denied any authority of the Association over their property and argued that the fence was necessary to protect their children from dogs and their hot tub from becoming an attractive nuisance. They also suggested that at least 10 other homeowners had erected fences "over the supposed four foot limit."

After the Lonsdales refused to comply with the Association's letters of demand, the Association filed its petition for permanent injunction, requesting a mandatory injunction ordering the Lonsdales to remove the offending fence within 45 days. Following discovery, the district court conducted a bench trial in the matter, and denied injunctive relief to the Association. In comments on the record at the close of the hearing, the court reasoned as follows:

"The argument was made there's going to be an economic loss due to decreasing value of properties because of the nonconforming fences. Now, if that argument was supported by the evidence, then I think the injunction would be granted. The difficulty I have with this case is I'm not persuaded that the evidence establishes that that economic loss would in fact occur and it would be an irreparable economic loss. . . .

. . . .

"[T]he Court doesn't believe that the evidence was sufficient to establish that there is going to be a decrease in property values to this subdivision because of the nonconforming fence here in question, and accordingly, judgment's granted for the defendants . . . ."

In its journal entry of judgment, the court stated:

"In order to prevail on a claim for injunctive relief, there must be irreparable harm to the Plaintiff if the injunctive relief is not granted. Irreparable harm means something more than measurable damages. Irreparable harm is something that is going to harm the Plaintiff in the future.

"Plaintiff has not established that there is going to be irreparable harm to it if the injunctive relief is not granted."

This appeal followed.

*Standard of Review*

The granting of an injunction is equitable in nature and involves the exercise of judicial discretion. Absent manifest abuse of that discretion, an appellate court generally will not interfere. *Linn Valley Lakes Property Owners Ass'n v. Brockway*, 250 Kan. 169, 171, 824 P.2d 948 (1992). Where an appeal frames issues of law, however, including the threshold legal requirements for injunctive relief in a specific case, a de novo standard of review applies. *City of Wichita v. Meyer*, 262 Kan. 534, 539, 939 P.2d 926 (1997); *Sampel v. Balbernie*, 20 Kan. App. 2d 527, 529, 889 P.2d 804 (1995).

*Restrictive Covenants Have Traditionally Been Enforced in Kansas Absent Any Requirement for an Independent Showing of Irreparable Injury*

The enforceability of restrictive covenants has its origin in common law and has long been recognized in the state of Kansas. *McColm v. Stegman*, 3 Kan. App. 2d 416, 419-20, 596 P.2d 167 (1979). Enforceability is based on the equitable principal of notice, whereby a person who takes land with notice of a restriction upon it will not be permitted to act in violation of that restriction. *Hecht v. Stephens*, 204 Kan. 559, 561-62, 464 P.2d 258 (1970). Persons who take real property with notice of restrictive covenants will not be permitted to act in violation thereof, and may be enjoined in equity. *Kennedy v. Classic Designs, Inc.*, 239 Kan. 540, Syl. ¶ 2, 722 P.2d 504 (1986).

Kansas case law has recognized at least three general equitable defenses to the enforceability of restrictive covenants: (i) the right may be lost by laches, waiver, or acquiescence in the violation of such restrictions, *N. P. Dodge Corp. v. Calderwood*, 151 Kan. 978, 980-81, 101 P.2d 883 (1940); (ii) enforceability may be denied when there has been a change in conditions so radical in nature as to neutralize the benefits of the restrictions and destroy their purpose, *South Shore Homes Ass'n v. Holland Holiday's*, 219 Kan. 744, Syl. ¶ 4, 549 P.2d 1035 (1976); and (iii) enforceability may be denied if contrary to the public interest. *Board of Reno County*

*Comm'rs v. Asset Mgmt. & Marketing L.L.C.*, 28 Kan. App. 2d 501, 506, 28 P.3d 436 ( 2001).

Despite a plethora of cases discussing injunctive relief for violation of restrictive covenants, we are unaware of any expressed requirement of an independent showing of irreparable injury in this context. See *City of Wichita*, 262 Kan. 534; *Linn Valley*, 250 Kan. 169; *Kennedy*, 239 Kan. 540; *Hecht*, 204 Kan. 559; *N.P. Dodge*, 151 Kan. 978; *South Shore Homes*, 219 Kan. at 744; *McDonald v. Emporia-Lyon County Jt. Bd of Zoning Appeals*, 10 Kan. App. 2d 235, 697 P.2d 69 (1985); *Schartz v. D R B & M Real Estate Partnership*, 5 Kan. App. 2d 625, 621 P.2d 1024 (1981); *McColm*, 3 Kan. App. 2d 416; *Holmquist v. D-V, Inc.*, 1 Kan. App. 2d 291, 563 P.2d 1112 (1977). Although this court briefly discussed an irreparable injury criteria in *Asset Mgmt.*, 28 Kan. App. 2d at 506, the case was decided on questions of public interest and the availability of inverse condemnation.

Given that the district court denied injunctive relief solely because the Association failed to independently demonstrate irreparable injury, we must address as a matter of first impression whether this showing is required by Kansas law for injunctive relief under these circumstances.

*Did the District Court Err as a Matter of Law in Denying Injunctive Relief for Clear Violation of Restrictive Covenants Solely Because the Court Perceived There Was No Independent Demonstration of Irreparable Injury?*

At the outset we must acknowledge the general rule that one of the four prerequisites for injunctive relief is that the movant will suffer irreparable injury unless the injunction issues. *General Building Contr., L.L.C. v. Board of Shawnee County Comm'rs*, 275 Kan. 525, 541, 66 P.3d 873 (2003); *Wichita Wire, Inc. v. Lenox*, 11 Kan. App. 2d 459, 462, 726 P.2d 287 (1986). Since our case law discussing injunctive relief for restrictive covenants has not expressly acknowledged or applied this general rule, we seek now to reconcile these cases from the restrictive covenant context with the general rules for injunctive relief in Kansas.

In the context of the substantive law of restrictive covenants, courts have generally recognized that damages are irrelevant to enforceability.

"As a general rule, a restrictive covenant may be enforced irrespective of the amount of damage which would result from the breach, and even though there is no substantial monetary damage to the complainant by reason of the violation. The right to enjoin the breach of restrictive covenants does not depend upon whether the covenantee will be damaged by the breach; the mere breach is sufficient ground for interference by injunction. Thus, for example, restrictive covenants as to the nature, location, or use of buildings will be enjoined even though no substantial damage is shown. A landowner in a subdivision seeking to enjoin a violation of a residential-only covenant need not show irreparable injury where there has been a substantial breach of the covenant." 20 Am. Jur. 2d, Covenants, Conditions, and Restrictions, § 277, pp. 695-96; see also § 283.

In *Clark v. Vaughan*, 131 Kan. 438, 443, 292 Pac. 783 (1930), our Supreme Court embraced this general rule:

"[T]he amount of damage that the plaintiff may sustain by the breach of such covenant is immaterial . . . . Generally speaking, a defendant will not be relieved from his obligation under such a contract on the ground that it will not affect the plaintiff much, if any, financially. The plaintiff is entitled to his rights under the contract regardless of the extent of his injury if the enforcement of the contract will not be burdensome and inequitable to the defendant."

Our courts have stated that where there is a full, complete, and adequate remedy at law through recovery of calculable money damages, the injury is not irreparable harm justifying injunctive relief. *Wichita Wire*, 11 Kan. App. 2d at 465. Since money damages need not be shown, nor are they an element of a claim for relief based on restrictive covenants, any inquiry into the adequacy of a money damage remedy is simply unnecessary in this context. This may explain why our cases discussing restrictive covenants reflect no analysis of irreparable harm. The injury sustained by the violation of such covenants is inherently irreparable in nature; *i.e.*, one can generally never achieve a full, complete, and adequate remedy of the breach of restrictive covenants through recovery of calculable money damages. This is, in fact, precisely what the district court observed herein, when it noted that the evidence failed to establish "that there is going to be a decrease in property values to this subdivision." The court seems to have misapplied the standard

in any event, since a finding of no measurable economic loss was precisely the criteria for irreparable harm. Obviously, this very absence of measurable economic loss incident to the breach was quite typical of restrictive covenant litigation and was no basis to deny injunctive relief.

Courts in other jurisdictions have specifically held that an independent showing of irreparable harm is not necessary to obtain injunctive relief for breach of a restrictive covenant. These cases recognize that the damage incident to any such breach is generally incapable of monetary valuation, and thus irreparable per se. See *United Properties v. Walsmith*, 312 N.W.2d 66, 75 (Iowa App. 1981). For other cases in accord, see *Gino's Pizza of East Hartford, Inc. v. Kaplan*, 193 Conn. 135, 139, 475 A.2d 305 (1984); *Europco Mgt. Co. of America v. Smith*, 572 So. 2d 963, 968-69 (Fla. Dist. App. 1990); *Focus Entertainment v. Partridge Greene*, 253 Ga. App. 121, 128, 558 S.E.2d 440 (2001); *Plumb v. Ruffin*, 328 N.W.2d 792, 795 (Neb. 1983); *Cafeteria Ops. v. Coronado-Santa Fe Assocs.*, 124 N.M. 440, 446, 952 P.2d 435 (Ct. App.), *cert. denied* 124 N.M. 311 (1997); *Logston v. Penndale, Inc.*, 394 Pa. Super. 393, 402, 576 A.2d 59 (1990); *Calvary Baptist Church at Tyler v. Adams*, 570 S.W.2d 469, 474 (Tex. Civ. App. 1978); *Viking Homes, Inc. v. Larkin*, 452 S.W.2d 25, 27 (Tex. Civ. App. 1970); *Dice v. Cen. Natrona County Imp. Service*, 684 P.2d 815, 816 (Wyo. 1984). Typical of the rationale of these cases is the reasoning of the Georgia Court of Appeals:

"[T]he violation of a restrictive covenant that is part of the development scheme affects the grantor and all other grantees, causing irreparable harm to the value of their respective property interests, because such restrictive covenant was part of the valuable contract consideration given and relied upon in the conveyance of land. [Citation omitted.] Thus, irreparable harm automatically occurs as a matter of law arising from a violation of a covenant running with the land, the relationship of the parties as grantor-grantee, and the consideration of the conveyance of less than a fee simple absolute for the burden imposed upon the land in the form of a restrictive covenant to protect the grantor and others who may wish to purchase the remaining land in the future." *Focus Entertainment v. Partridge Greene*, 253 Ga. App. at 127-28.

We conclude that it was error for the district court to deny injunctive relief herein solely because the plaintiff failed to make an

independent showing of irreparable harm resulting from the breach of restrictive covenants. We remand for further proceedings to determine whether any other equitable defense recognized above should preclude the mandatory permanent injunction sought by the Association.

Reversed and remanded.