The opinion of the Court was delivered at the following November term, by
Parker C. J.
[After stating the ground of the action and of the defence, he proceeded :] The merits of this defence depend upon the power and authority given to surveyors of highways by the statutes of the Commonwealth, upon the validity of those statutes in reference to the constitutional power of the legislature on such subjects, and upon the right execution of the powers so given.
Preliminary questions were made on the argument, as to the choice and qualification of the defendant in the office of surveyor ; and also as to its being necessary that the limits of each surveyor should have been assigned to him by the board of aldermen, before he could enter upon the duties of his office.
At the trial of the cause before the jury, a certificate of the city clerk of the choice of the defendant, and of his being sworn before he entered on the duties of his office, was produced and read, and this was not objected to, nor was any other evidence called for. The objection, therefore, came too late, for, if made seasonably, the supposed defect would prob *433 ably have been supplied by producing the record, or, if that through carelessness had not been made, by furnishing other evidence of the fact.
As to there being no limits assigned, we do not think the power of the surveyors depends upon this act by the selectmen or mayor and aldermen. The only difference is, that where limits are assigned, each surveyor is sole judge within his own limits of the duty to be performed ; whereas, if there are no limits, it may be necessary for them to act together or by the voice of the major part of the whole body.[1] The statute in this respect is directory only, and the power of the surveyors does not depend upon its being executed.
It is proved in the case, that, before the defendant began to work upon the street, he had advised with and had the assent of the only other person who had accepted the office of surveyor and been qualified to execute it, and that while the work was proceeding, as soon as a third surveyor had been appointed and qualified, his concurrence was also obtained.
We are brought, therefore, to the two principal points in the case before stated. And, first, we are to consider whether the defendant had lawful authority to do the acts complained of by virtue of his office of surveyor of the highways, without any decision of the mayor and aldermen, who stood in the place of the selectmen, that the reduction or levelling of the streets was necessary. The streets which were dug down were either public highways, or town-ways, and it is immaterial which, as both species of ways within the town or city of Boston are subject to the general statute of 1786, c. 67, and to the several statutes which have established particular provisions for the streets in the town of Boston. These statutes differ from the general statute only in vesting the power of laying out and altering streets in the selectmen of Boston, without the authority of the inhabitants of the town. The duty prescribed to surveyors of highways, their power and authority, are the same *434 within the town of Boston, as in the other towns of the Commonwealth.
The power and duty of these officers are described in the statute of 1786, c. 81, the first section of which provides, &c [Vid. ante, 419.] This very general and extensive authority would seem to include every thing -which may be neeued towards making the ways perfect and complete, either by levelling them where they are uneven and difficult of ascent and descent, or raising them where they should be sunken and miry ; either of which acts may be essential towards making the way safe and convenient for travellers with their horses, carriages, &c.
We cannot imagine that the power of surveyors is limited, as was contended in the argument, to clearing obstructions from the surface and smoothing the way; for when this is done, it may still remain unsafe and inconvenient on account of the abruptness of its descent; and to remove a hill which renders the travelling difficult is to remove an obstruction, which, in the words of the statute, is a matter or thing which hinders, hurts and incommodes the way; and, furthermore, the power to dig up and remove earth, stones, marl, &c., in all land which is not planted or inclosed, gives the power to take from any hill in the road the material necessary for filling up any part of it which requires raising.
It has, however, been contended in argument, and this is the strong point of the case for the plaintiff, that digging down and reducing a street below the level at which it was fixed when laid out, and especially when houses or other buildings have been erected on its borders, is an alteration of the street which it is not within the powers of the surveyor to make, and which can only be authorized by the selectmen, or by that body which exercises the same power in the city of Boston ; and that, pursuant to the statute giving the authority, the plaintiff would have been entitled to damages, in the mode therein prescribed, had this supposed legal course been pursued. If this argument is well founded, certainly the plaintiff would be entitled to maintain this action ; for if the acts done were of the nature supposed, it would follow that the surveyor could not justify himself witho it showing that the mayor and alder-
*435 men had passed apon the subject, and had given the plaintiff an opportunity to be heard in damages. But upon the best consideration we can give the subject, we are satisfied that it was not a case for the adjudication of the mayor and aldermen. Their power is limited to the original laying out of the ways, or to the altering or turning of them after they shall once have been established. In the statute the words alteration and turning of a road are used indifferently, and are intended to convey a similar meaning.
The intention of the legislature may be ascertained by considering the general course and system they have pursued, in regard to this important subject of public ways. In respect to what are called highways, which are those which lead from town to town, for the convenience of public travelling, the power is vested in the Court of Sessions in each county, and this power is unlimited. As to town-ways, the General Court have given the power to the selectmen, subject to a revision by the inhabitants of the town, and in both cases provision is made for indemnity to individuals whose lands may be taken for the public use. The same power is given to the same bodies in regard to alterations and discontinuance of ways, and this is in conformity with the article in the Declaration of Rights, which provides for indemnity to any citizen whose property is taken for public use. In respect to Boston, the whole power was vested in the selectmen, without any appeal to the inhabitants, until the late incorporation of the city, when the power and duty in relation to ways devolved upon the mayor and aldermen ; and the same mode of relief is secured to those who may have their land taken, as is provided by the general statutes.
A way or street once laid out pursuant to law falls under the care of the surveyors, and the town authorities have nothing further to do with it. It is the duty of the surveyor to see that the road is made passable, safe and convenient; and this he is obliged to do by filling up low places and reducing hills ; in which duty he must act with discretion, for he acts at his peril. If the public safety and convenience require a levelling of the road, he must do it with as much care in relation to property bordering on the road, as it is possible for him to use ; and if *436 he should abuse his authority by digging down or raising up, where it might not be necessary for the reasonable repair and amendment of the road, he would be amenable to any suffering party for his damages. Such acts are not an alteration or turning of the road, but merely repairing and amending it Perhaps the word repair, which has been crit cally examined, would not embrace a work of the kind complained of, if it stood alone. To repair means probably to replace or remake, reficere., to restore what has been impaired or injured ; but the word amend is broad enough to cover any thing which may tend to make the road better ; and this can in no way be done more effectually, than by cutting down a sharp hill and carrying the materials to the foot, so as to reduce the acclivityof the road.
The counsel for the plaintiff have, with laudable dilligenc.e, looked into the civil law to see what course was pursued in ancient times respecting public roads, presuming that on a subject of such common concern the principles adopted by all governments in all times would be nearly the same ; and although our own statutes are to be the sole guide of decisions in matters altogether of a local nature, it is well enough to see whether any information can be drawn from so ancient a source, in regard to the use and meaning of terms employed by our own legislature.
The general care of the roads was in the iEdiles ; who probably exercised the power and jurisdiction which is given by our statutes to the Court of Sessions. These appointed subordinate agents for the care of roads within the city, who were called quatuor viri from their number ; and to the duum viri was given the care of the roads without the city. These officers probably answered to the character of our surveyors. The first were called quatuor viri, vils urbanis curandis ; the second, duum viri, viarum publicarum extra urbem curatores. Their duty was, among other things, adcequare, to level the highways, and to construct bridges when necessary. Each individual citizen was obliged to make certain repairs near his own house, as our citizens are obliged to make and keep in repair the sidewalks. The interdict which was quoted in the argument, viz. Interdictum hoc perpetuo dabitur, et omnibus et in omnes, <$•<:., related to private persons, not to any.of the above- *437 named public officers. Heinecc. sec. Ord. Band. part. 1, §74; D. 1, 2, 2, 30 ; D. 43, tt. 10, 11, 19, et notis.
No inference can be drawn from these provisions m favor of the plaintiff in the present action, as it does not appear that any means were provided of indemnifying those who might be put to charge or expense in consequence of the necessary repair of the highways ; nor does it appear that the levelling a way already laid out was a subject of adjudication on which persons bordering on the road were parties, having a right to claim compensation'. And, indeed, if such were the provisions of the Roman law, it is difficult to perceive how they could be introduced into ours by any other power than the legislature. We have only to look at our statutes, and we think they explicitly and clearly give the power to the surveyors, which was exercised by the defendant in the case before us.
But it is said, if such be the construction of the statute, the legislature exceeded its constitutional powers, and that the defendant therefore cannot justify under the statute. This objection is founded upon the last clause in the 10th article of the Declaration of Rights, which provides, “ that whenever the public exigencies require that the property of any individual should be appropriated to public uses, he shall receive a reasonable compensation therefor.” [1]
There has been no construction given to this provision, which can extend the benefit of it to the case of one who suffers an indirect or consequential damage or expense, by means of the right use of property already belonging to the public. It has ever been confined, in judicial application, to the case of property actually taken and appropriated by the government. Thus, if by virtue of any legislative act the land of any citizen should be occupied by the public for the erection of a fort or any public edifice upon it, without any means provided to indemnify the owner of the property, the title of the owner could not be devested thereby, and he might maintain his action for possession, or of trespass, against those who were instrumental in the act; because •'such a statute would be directly contrary to the above cited provision ; and as no action can be maintained against the public for damages, the only way *438 to secure' the party in his constitutional rights would b? tc declare void the public appropriation. It is upon this principle that the legislature have, in the general law respecting highways, and in their numerous acts authorizing the making of turnpikes, bridges, canals, &c., provided that the party, whose property is taken to carry into effect these purposes, shall be indemnified and have secured to him an eventual trial by jury on the question of damage', if no compromise shall be made by the several parties. But this course has been confined to the direct loss of property sustained by the individual, and such expenses as are necessarily incident to the very act of taking it.
The streets on which the plaintiff’s house stands had become public property by the act of laying them out conforma bly to law, and the value of the land taken must have been either paid for, or given to the public, at the time, or the street could not have been legally established. Being legally established, although the .right or title in the soil remained in him from whom the use was taken, yet the public acquired the right, not only to pass over the surface in the state it was in when first made a street, but the right also to repair and amend the street, and, for this purpose, to dig down and remove the soil sufficiently to make the passage safe and convenient. Those who purchase house lots bordering upon streets are supposed to calculate the chance of such elevations and reductions as the increasing population of a city may require, in order to render the passage to and from the several parts of it safe and convenient, and as their purchase is always voluntary, they may indemnify themselves in the price of the lot which they buy, or take the chance of future improvements, as they shall see fit. The standing laws of the land giving to surveyors the power to make these improvements, every one who purchases a lot upon the summit or on the decline of a hill,is presumed to foresee the changes which public necessity or convenience may require, and may avoid or provide against a loss.
That this has been the practical construction of our statute we can entertain no doubt ; for many instances must have occurred, within our principal towns, of streets raised or reduced in such manner as to occasion expense to borderers, and no claim of damages has ever been heard of; and in the country *439 towns it is noi unusual to level roads, so as to oblige the owners of fields to rebuild their fences or stone walls, and no pom-plaint has been made.
There are cases, without doubt, where an individual may Buffer by the exercise of this power, and thus be made involuntarily to contribute much more than his proportion'to the public convenience ; but such cases seem not to be provided for, and must be left to that sense of justice which every community is supposed to be governed by.
A fort may be erected on public ground so near to a man’s dwellinghouse as materially to reduce its rent and value ; the public would not be bound to indemnify the suffering party,, for when he built so near to unoccupied ground, which the public had a right to occupy for any purpose its exigencies might require, he should have foreseen the possible purpose to which it might be applied, and should have guarded against a future loss, by abstaining from building there. So the location of schoolhouses upon public land may materially diminish the value of an adjoining or opposite dwellinghouse, on account of the crowd and noise which they usually occasion ; but it can not be imagined, that the public are obliged to consult the c9n venience of the individual so far as to abstain from erecting the schoolhouse, or to pay the owner of the dwellinghouse for its diminished value. These are cases of damnum sine injuria, and though proper for the favorable interposition of the com munity for whose benefit the individual suffers, they do not give a right to démand indemnity, by virtue of the above cited article in the Declaration of Rights.
The case of highways or public streets is analogous ; when rightfully laid out, they are to be considered as purchased by the public of him who owned the soil, and by the purchase the right is acquired of doing every thing with the soil over which the passage goes, which may render it safe and convenient ; and he who sells may claim damages, not only on account of the value of the land taken, but for the diminution of the va.ue of the adjoining lots, calculating upon the future probable reduction or elevation of a street or road ; and all this is a proper subject for the inquiry of those who are authorized to lay out, or of a jury, if the parties should demand *440 one. And he who purchases lots so situated, for the' purpose °f building upon them, is bound to consider the contingencies which may belong to them.
Cases apparently hard will occur ; the present is sucn a one. The plaintiff’s house has been standing twenty years, and he had reason to expect, that in any contemplated improvement in the streets his liability to expense would have been attended to by the city authorities ; who, had they forbidden the surveyor to proceed, even if they had no legal right to restrain him, would have exposed him to an opinion of the jury, that his proceedings were unnecessary and wanton, and so subjected him to damages ; but there being no such interposition, on the contrary, the other surveyors having concurred in the act, the committee of the board of aldermen knowing and approving it, it is impossible for us to find the surveyor guilty of a wrong ; it not being denied that the acts done have rendered the streets more safe and convenient than they were before. It may be a case very suitable for the consideration of the city authori ties, whether, according to the practice in like cases of improvements designed for the general good necessarily creating expense to individuals, some fair indemnity ought not to be allowed; but of this they are the judges. If it is not now within the authority of the city officers, it is certainly worthy consideration, whether an application to the legislature ought not to be made, to authorize them to indemnify those citizens who may, in the necessary exercise of powers used for public improvement or convenience, be made indirectly to contribute an undue proportion for those purposes ; and there seems to be no good reason why others, whose property is enhanced in value at their neighbour’s expense, should not be held to furnish part of the indemnity. If the reducing or raising of streets which have been laid out for a definite number of years, and on which houses have been erected, should be made a matter of adjudication, like that of altering, widening or turning a street, subject to the same provision for damages, the mischief would be cured ; for although, theoretically, all this may be considered as determined when the street is originally laid out, yet practically there may be cases where this just provision has been overlooked.
*441 We do not find in any of the cases cited, or in any authorities presented to our consideration, any thing which impugns the opinion we have adopted. The passages from Dalton only show, that the law in respect to highways, and the duty and power of surveyors is nearly the same in England as with us. Without doubt our statutes were framed with reference to the common law and statutes of England. Whenever a new road or way is to be laid out, or an existing one enlarged or widened, provision is made for indemnity. The inquiry of damages on a writ of ad qvod damnum, or by jury summoned by the quarter sessions, is applicable only to such cases. So by our statutes the compensation is given when a road is laid out, or turned, or altered, or discontinued, but in no other case ; and this compensation is for the land taken, or for the immediate expense consequent upon the act. Levelling a road is not anywhere found to be considered an alteration of it; nor do we find that the injury it may produce has been compensated ; unless it be in the case of Leader v. Moxon, 3 Wils. 461 ; which case is spoken of with disapprobation by Lord Kenyon and Mr. Justice Butter, in a subsequent case in 4 D. & E. 794, and the principle of it overruled. Indeed in a report of the same case, by Sir W. Blackstone, vol. 2, p. 926, it is stated, that the commissioners had grossly exceeded their authority ; which seems, according to this last report, to have been the principal ground of the decision.
We can perceive no difference in the principle on which this action is founded, and that which was involved in the case of Thurston v. Hancock, 12 Mass. Rep. 220; and the decision in that case was approved of and adopted by the Supreme Court of New York, in the case of Panton v. Holland, 17 Johns. Rep. 100.
That it might be proper for the legislature, by some general act, to provide that losses of the kind complained of in this suit should be compensated by the town or city within which improvements may be made for the public good, or by the owners of land which may be particularly benefitted, is not for us to deny; but without such legislative provision, we have no authority upon the subject, it being clear that by the common law, as well as by our statutes, the defendant in this action *442 is not liable to damages. In no case can a person be liable to an act'on as f°r a tort:i l"01' an act which he is authorized by law to do ; and as the statute authorizes surveyors to amend roads and streets by digging them down and building them up where necessary, the legislature not being prohibited by the constitution from enacting such a statute, we think the defendant is entitled to judgment.

Verdict set aside and a nonsuit entered.

 See Jones v. Lancaster, 4 Pick. 119. The members of a committee, appointed in pursuance of St. 1786, c. 67, § 4, must all act in laying out a highway, though a return may be made by the major part Commonwealth v. Ipswich, 2 Pick. 70.

 See Charles River Bridge v. Warren Bridge, 7 Pick. 344.