IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 111,082

JAMES M. CREEGAN, *et al.*,
*Appellants*,

v.

THE STATE OF KANSAS, *et al.*,
*Appellees*.

SYLLABUS BY THE COURT

1.

A Fifth Amendment taking occurs when a party with the power of eminent domain deprives the owner of a property right. In order for the taking of an intangible property right to be compensable in Kansas, it is not necessary that the property be physically taken or for the property to be damaged within the meaning of K.S.A. 26-513(a).

2.

The violation of a restrictive covenant running with subdivision land by a party with the power of eminent domain is a compensable taking of a private property interest in real estate possessed by an owner of a dominant subdivision parcel, and that owner may sue in inverse condemnation.

Review of the judgment of the Court of Appeals in an unpublished opinion filed January 23, 2015. Appeal from Johnson District Court; JAMES F. VANO, judge. Opinion filed March 24, 2017. Judgment of the Court of Appeals reversing and remanding to the district court is affirmed. Judgment of the district court is reversed and remanded with directions.

1

*Douglas J. Patterson*, of Property Law Firm, LLC, of Leawood, argued the cause, and *Michelle W. Burns* and *Kellie K. Warren*, of the same firm, were with him on the brief for appellants.

*Charles E. Millsap*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, argued the cause, and *Lyndon W. Vix*, of the same firm, and *Timothy P. Orrick* and *Paul Schepers*, of Orrick & Erskine, L.L.P., of Overland Park, and *Barbara W. Rankin*, chief counsel, of Kansas Department of Transportation, were with him on the briefs for appellees.

*Timothy P. Orrick*, of Orrick & Erskine, L.L.P., of Overland Park, was on the brief for *amici curiae* League of Kansas Municipalities, City Attorneys Association of Kansas, Kansas Association of Counties, and Kansas Rural Water Association.

*Christopher F. Burger*, of Stevens & Brand, L.L.P., of Lawrence, was on the brief for *amicus curiae* Westar Energy, Inc.,

The opinion of the court was delivered by

BEIER, J.: This is an inverse condemnation action brought by property owners in the Grande Oaks subdivision in Overland Park to seek compensation from the State of Kansas and the Kansas Department of Transportation (collectively KDOT) for violation of restrictive covenants burdening subdivision property. KDOT obtained summary judgment in defendants' favor in the district court, but a panel of the Court of Appeals reversed. *Creegan v. State*, No. 111,082, 2015 WL 423835 (Kan. App. 2015) (unpublished opinion).

Today, on KDOT's petition for review, we depart from the rationale of the Court of Appeals but affirm its result. Violation of restrictive covenants can support the taking of a compensable real property interest in an inverse condemnation action. And this case must be remanded to district court to determine the amount, if any, of the just compensation due to the plaintiffs.

2

FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts of this case and its procedural history in the district court are not in dispute. As the Court of Appeals set out those facts and history:

"Grande Oaks is a subdivision in Johnson County, Kansas. The plots within Grande Oaks were made subject to a Declaration of Restrictions filed in the Register of Deeds Office of Johnson County, Kansas, on June 22, 1978. In relevant part, the Declaration of Restrictions stated that the property within Grande Oaks should be occupied and used for single-family residence purposes only.

"In 1999, KDOT purchased a sizeable section of real property from Christ Evangelical Lutheran Church of Lenexa, Kansas, Inc., which included land platted as lots 55 through 75 in Grande Oaks. In 2005, KDOT placed trailers on these lots and, in subsequent years, used the lots for various construction activities. Eventually, KDOT constructed permanent bridges and pavements on a number of the lots. The existing traffic pattern currently utilizes these newly constructed facilities.

"In March 2012, Plaintiffs, who all owned real property in Grande Oaks, initiated this lawsuit claiming inverse condemnation by Defendants. After some limited discovery, Defendants filed a motion for summary judgment[,] arguing that violation of the restrictive covenant in this case was not a compensable taking under Kansas law." *Creegan*, 2015 WL 423835, at *1.

As the Court of Appeals noted, no transcript of the district court hearing on summary judgment is included in the appellate record, but the record does contain a memorandum decision issued by the district judge. It reads in pertinent part:

3

"In this case, Plaintiffs do not allege an actual, physical taking. Instead, they allege that Defendant damaged their property by using its own property in violation of its deed restrictions. . . .

"The watershed issue in this case, the claim from which all of the Plaintiffs' theories of damages flow entirely[,] is the State's violation of the restrictive covenants running with the land. Restrictive covenant compliance may be a contractual expectation, an intangible property right of the Plaintiffs and every other property owner in the subdivision. There is no dispute that the State has violated the restrictive covenants with respect to the lots it owns through purchase. However, violation of the restrictive covenants is not a physical taking. Some physical taking or substantial inevitable damage resulting in a taking must be alleged and produced in evidence to support a claim for inverse condemnation. The 'taking' alleged in this case is not a compensable taking at all. . . .

. . . .

". . . This trial court . . . will not create or expand the cause of action not otherwise recognized under Kansas law.

. . . .

". . . The Plaintiffs' case at bar pivots entirely upon the violation of restrictive covenants burdening property owned by the State. In Plaintiffs' theory, damages flow from the violation of the restrictive covenants. There is no evidence in this case of any actual physical taking of the real property, or substantial or sustained and inevitable physical damages to the real property amounting to a 'taking' of the real property owned by the Plaintiffs.

"Defendant argues that Plaintiffs' only claim of damages is the alleged diminution in the values of their respective properties, which are not compensable in an inverse condemnation case. On the other hand, Plaintiffs argue that they have alleged compensable damages. Plaintiffs alleged damages do not rise to the level of the taking

4

required for inverse condemnation. They are incidental to the primary claim upon which the Plaintiffs rest, *i.e.*, violation of the restrictive covenants. They are not compensable in inverse condemnation.

"In response to Defendant's Motion for Summary Judgment, Plaintiffs have only provided evidence of a diminution in value of their properties."

At the close of this discussion, the district judge granted summary judgment to the defendants.

On appeal, a majority of the Court of Appeals panel ruled that restrictive covenants are real property interests and that the damage done to those property interests by KDOT's violation of the covenants required just compensation. 2015 WL 423835, at *6. Judge G. Gordon Atcheson concurred in the majority's result, but he would have treated restrictive covenants as a hybrid of real property interests and contract interests. Under his design, compensation would be due only for violation of restrictive covenants exhibiting the attributes of a real property interest. 2015 WL 423835, at *6 (Atcheson, J., concurring). Whether these attributes exist would have to be determined on a case-by-case basis. According to Judge Atcheson, "[a] government entity takes the property interests embodied in a restrictive covenant to the extent the nonconforming use to which it puts restricted land creates or causes conditions that intrude upon privately owned land subject to that same restriction." 2015 WL 423835, at *17 (Atcheson, J., concurring).

DISCUSSION

Because the district judge granted summary judgment to the defendants, we apply the following standard of review:

5

"'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citations omitted.]' *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P.3d 333 (2009)." *Fawcett v. Oil Producers, Inc. of Kansas*, 302 Kan. 350, 358-59, 352 P.3d 1032 (2015).

The issue of law at the heart of this case is whether there has been a compensable taking of a private interest in real property. See *Estate of Kirkpatrick v. City of Olathe*, 289 Kan. 554, 559, 215 P.3d 561 (2009) (citing *Korytkowski v. City of Ottawa*, 283 Kan. 122, 128, 152 P.3d 53 [2007]). An issue of law is reviewable de novo on appeal. See *Platt v. Kansas State University*, 305 Kan. 122, 126, 379 P.3d 362 (2016).

"This court has long recognized that 'the right to take private property for a public use is inherent in the state.'" 289 Kan. at 558 (quoting *State, ex rel. v. Urban Renewal Agency of Kansas City*, 179 Kan. 435, 438, 296 P.2d 656 [1956]). But that power is limited by both federal and state law.

Both the federal and state Constitutions address takings for public use. The Fifth Amendment to the United States Constitution provides that "private property [shall not] be taken for public use, without just compensation." Article 12, Section 4 of the Kansas Constitution provides that "[n]o right of way shall be appropriated to the use of any corporation, until full compensation therefor be first made in money, or secured by a

6

deposit of money, to the owner, irrespective of any benefit from any improvement proposed by such corporation." See also *Kirkpatrick*, 289 Kan. at 558; *Hiji v. City of Garnett*, 248 Kan. 1, 12, 804 P.2d 950 (1991) (both constitutional provisions "guarantee payment for private property appropriated to public use").

In addition, the Kansas Eminent Domain Procedure Act (EDPA) sets out procedures for condemnation of interests in real property. K.S.A. 26-501 *et seq*. EDPA's repeated references to "real estate," "real property," "lots," "parcels," "tracts," "land," and "interests" therein, as well as to "landowners," make the focus of its procedural directives on only real property and interests tied to real property clear. See K.S.A. 2016 Supp. 26-501(b) ("real estate"); K.S.A. 2016 Supp. 26-501(c)(2) (definition of "taking" includes "any interest in private real property"); K.S.A. 26-502 ("each lot, parcel or tract of land"); K.S.A. 2016 Supp. 26-503 ("lands"); K.S.A. 2016 Supp. 26-504 ("real estate," "lots and parcels"); K.S.A. 2016 Supp. 26-505(4), (5) ("land taken and damages resulting from such taking," "subject real estate"); K.S.A. 2016 Supp. 26-506 ("lands . . . tracts of which the lands are a part"); K.S.A. 2016 Supp. 26-507(a), (b) ("tracts," "title, easement or interest appropriated in the land condemned," "tracts"); K.S.A. 2016 Supp. 26-508 ("damages to all interests in the tract"); K.S.A. 26-509 ("landowners"); K.S.A. 26-512 ("upon the land"); K.S.A. 26-513(b), (c), (d)(6-11) ("entire tract," "part of a tract of land or interest is taken," "tract," "land," "taking of land"); K.S.A. 26-517 ("real property"); K.S.A. 2016 Supp. 26-518 ("real property").

In its real property limitation, EDPA is narrower than the plain language of the federal Takings Clause, which extends to all "private property." But this court has recognized that EDPA is substantively broader than the plain language of the federal constitutional provision in at least one respect: EDPA makes not only takings but also damage to real estate or an interest in it compensable. See K.S.A 26-513(a) (Property

7

"shall not be taken *or damaged* for public use without just compensation. [Emphasis added.]); *Kirkpatrick*, 289 Kan. at 559.

Ordinarily an eminent domain proceeding is initiated by the condemning authority to determine the extent of a taking and the compensation due. *Kirkpatrick*, 289 Kan. at 558-59. In contrast, an inverse condemnation action such as this is initiated by a property owner alleging that an interest in property has been taken for public use without a formal condemnation proceeding. 289 Kan. at 559. The same rules apply to determine the right to damages and their measure in both actions. *Brock v. State Highway Commission*, 195 Kan. 361, Syl. ¶ 3, 404 P.2d 934 (1965), *disapproved of on other grounds Hales v. City of Kansas City*, 248 Kan. 181, 184, 804 P.2d 347 (1991).

The three traditional elements for eminent domain or inverse condemnation are: (1) a private property interest (2) taken (3) for public use. See Stoebuck, Nontrespassory Takings in Eminent Domain, 19-20 (1977). If each element is present, just compensation must be paid. In this inverse condemnation case, there is no contest over the existence of the third element of public use and we therefore will not examine it. On the first and second elements, the parties have largely talked past each other.

The plaintiffs, for their part, have focused most of their effort on the first element of whether a private property interest, specifically, a private real property interest, existed. They argue at length that the restrictive covenant in the Grande Oaks Declaration of Restrictions gave rise to a real property interest rather than a mere contract interest and, assuming that, the facts make KDOT's taking of that interest a given.

For their part, KDOT has placed their chief emphasis on whether there was a "taking." But KDOT does not focus on a traditional taking in the sense of transfer of legal title. Instead, they understand this case to concern EDPA's more expansive allowance of

8

an award for "damage" to plaintiffs' real property. See K.S.A. 26-513(a) ("Private property shall not be taken or damaged for public use without just compensation."). Under *Kirkpatrick*'s interpretation of EDPA, KDOT argues, the public use to which they have put their own subdivision parcels must have caused inevitable and substantial physical damage to plaintiffs' subdivision parcels before plaintiffs can recover in inverse condemnation.

In essence, the Court of Appeals majority focused first on the plaintiffs' formulation of the issues before it and then on KDOT's, but it ruled in plaintiffs' favor on both.

First, on the question of whether an interest in real property existed, the panel majority noted a prior panel's decision in *Board of Reno County Comm'rs v. Asset Mgmt. & Marketing L.L.C.*, 28 Kan. App. 2d 501, 18 P.3d 286 (2001):

> "In that case, Reno County purchased land in a subdivision that was burdened by a restrictive covenant limiting it to single-family residential use. After purchasing the land, Reno County adopted a resolution authorizing it to build a water tower on the land. After the resolution passed, the subdivision landowners conveyed their intention to seek an injunction to prevent the county from building the water tower. In anticipation of the landowners' request for an injunction, Reno County filed a petition for a declaratory judgment seeking a declaration from the court that construction of the water tower did not violate the restrictive covenants and that an injunction would cause economic loss. In their answer to the petition, the landowners generally denied the allegations and, as Reno County anticipated, filed a counterclaim seeking an injunction to prevent construction.
>
> "After an evidentiary hearing, the trial court determined that building the water tower violated the restrictive covenant. But because Reno County's petition sought a declaration from the court on the landowner[s'] request for an injunction to prevent construction of the water tower, the trial court analyzed the issue using principles of

equity. See *Smith v. State*, 264 Kan. 348, 355, 955 P.2d 1293 (1998) (injunction is an equitable remedy designed to prevent irreparable injury by prohibiting or commanding certain acts). In weighing the equities, the trial court found the existing water system was insufficient for peak usage periods and questionable for purposes of fire protection. In support of its decision to grant judgment in favor of Reno County and deny the landowners' request for an injunction, the trial court concluded that "'grant[ing] an injunction in this case would not be equitable or just. The public interest in this case will be best served if the proposed water tower is constructed as planned."' *Asset Mgmt. & Marketing L.L.C.*, 28 Kan. App. 2d at 503.

"A panel of this court affirmed the decision, finding the landowners failed to provide evidence that they would face irreparable injury if the water tower were built, a necessary element of an injunction request. Relevant to the issue before us in this case, the court further found injunctive relief inappropriate because a full, complete, and adequate remedy at law was available to the landowners:

'There is nothing which would prevent appellants from initiating an inverse condemnation proceeding. Appellants claim that it is not a full remedy because it would be unfair to force private landowners to suffer the burden and expense of filing an inverse condemnation claim. However, the law does not require that landowners be given the most expedient remedy.' 28 Kan. App. 2d at 507.

"*Of course, implicit within the court's finding that there was nothing to prevent the landowners from filing an inverse condemnation proceeding is the legal conclusion that a subdivision restrictive covenant represents an interest in real property entitled to eminent domain protection.*" (Emphasis added.) *Creegan*, 2015 WL 423835, at *2-3.

The Court of Appeals majority then noted a prior panel's decision in *Persimmon Hill First Homes Ass'n v. Lonsdale*, 31 Kan. App. 2d 889, 75 P.3d 278 (2003), which involved a restrictive covenant dispute between private parties. That decision had cited language from a Georgia case approvingly:  "'[T]he violation of a restrictive covenant

10

that is part of the development scheme affects the grantor and all other grantees, causing irreparable harm to the value of their respective property interests, because such restrictive covenant was part of the valuable contract consideration given and relied upon in the conveyance of land.'" *Persimmon Hill*, 31 Kan. App. 2d at 895 (quoting *Focus Entertainment v. Partridge Greene*, 253 Ga. App. 121, 127, 558 S.E.2d 440 [2001]).

And, finally, in ruling that a real property interest rather than a mere contract interest existed, the panel majority relied upon this court's recognition that an oral promise limiting the use of purchased real property created an "'interest in real estate'" covered by the statute of frauds. *Creegan*, 2015 WL 423835, at *3 (quoting *Cooper v. RE-MAX Wyandotte County Real Estate, Inc.*, 241 Kan. 281, 290, 736 P.2d 900 [1987]).

Turning to KDOT's question of whether there had been a taking by KDOT, the Court of Appeals majority relied on *Kirkpatrick*'s rubric for whether "damage" to real property in the neighborhood of condemned property was sufficient to be compensable. In that case, which involved flooding, *i.e.*, physical damage, to the real property owned by the plaintiff, we required that actionable damage be "(1) a result of government action carried out for public benefit and (2) substantial in nature." *Creegan*, 2015 WL 423835, at *4 (citing *Kirkpatrick*, 289 Kan. at 569). Rejecting KDOT's arguments that violation of the restrictive covenant at issue in this case was merely tangential or incidental and that it resulted in only a noncompensable diminution in the value of the plaintiffs' parcels, the majority ruled that there had been a permanent deprivation of the plaintiffs' right to enforce the restrictive covenant. That "damage" was sufficient to be a "damage" under EDPA. 2015 WL 423835, at *5-6.

The Court of Appeals majority also rejected KDOT's arguments based on public policy, arguments that focused on administrative inconvenience and cost as well as the possibility of subdivision landowner collusion to drive up eminent domain or inverse

11

condemnation awards. The majority discounted those arguments, emphasizing that such concerns must bend to the requirement of just compensation under the Fifth Amendment. See 2015 WL 423835, at *5.

Judge Atcheson's concurrence argued that the majority's reasoning was inadequately supported by *Asset Mgmt.*, *Persimmon Hill*, and *Cooper*. He suggested an alternative hybrid approach to the property interest question, proposing that some restrictive covenants be treated as compensable property interests and some as noncompensable contract interests. The determination would be made on a case-by-case, property-by-property basis. 2015 WL 423835, at *6-8 (Atcheson, J., concurring). An inverse condemnation plaintiff must show that a nonconforming use "creates or causes conditions" intruding upon the plaintiff's privately owned land and that "[t]he intrusion must be measurable in some sensory way and not merely the product of an entirely subjective aesthetic aversion to the use." 2015 WL 423835, at *17 (Atcheson, J., concurring). Because Judge Atcheson ultimately characterized the plaintiffs' property interests in this case as "the quiet enjoyment of a single-family residence flanked by other single-family residences," he was willing to remand for determination of the amount of just compensation due. 2015 WL 423835, at *17 (Atcheson, J., concurring.)

*Clarification of the Question Before Us*

As discussed below in more detail, both parties and the members of the Court of Appeals panel have mistakenly concentrated on the potential applicability of EDPA's language about damage to plaintiffs' subdivision parcels to the unfortunate exclusion of a more traditional "taking" analysis. This approach has led to confusion on the question actually before us. In fact, we are far less concerned with whether there was physical damage to the parcels owned by plaintiffs than with whether their right to a certain amount of legal control over use of the parcels owned by KDOT was vaporized. This

right, possessed by plaintiffs as a function of the restrictive covenant governing all subdivision parcels, was one of the "sticks" in the valuable "bundles of sticks" they paid for when they acquired their land. See *In re Equalization Appeal of Prieb Properties*, 47 Kan. App. 2d 122, 130, 275 P.3d 56 (2012) (ownership of fee simple interest equivalent to ownership of complete bundle of sticks that can be privately owned).

This means that the language in EDPA about damage should not be our primary analytical focus; this is not merely a case of statutory interpretation or construction. We may look to state law to define the nature of plaintiffs' interest. See *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 164, 118 S. Ct. 1925, 141 L. Ed. 2d 174 (1998); see also *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001, 104 S. Ct. 2862, 81 L. Ed. 2d 815 (1984) (property interests not created by Constitution; property interests created, their dimensions defined by existing rules, understandings stemming from independent source such as state law) (quoting *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 161, 101 S. Ct. 446, 66 L. Ed. 2d 358 [1980], and *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 [1972]). But we are not limited to the "damage" language of EDPA or *Kirkpatrick*'s interpretive gloss on it. Rather, we must examine the character of restrictive covenants in Kansas and the rights they produce and protect for owners of the land with which they run. We also are not concerned with whether KDOT's actions constitute a permissible taking under EDPA. The question is whether there has been a taking requiring just compensation under the federal Constitution. Regardless of what types of takings the legislature has authorized under EDPA, we are concerned with whether the plaintiffs' Fifth Amendment right to just compensation is being infringed. *Cf.* K.S.A. 2016 Supp. 26-501a (generally prohibiting use of eminent domain for purpose of transferring property to private entity).

*The Character of the Restrictive Covenant*

A restrictive covenant is "[a] private agreement, [usually] in a deed or lease, that restricts the use or occupancy of real property, [especially] by specifying lot sizes, building lines, architectural styles, and the uses to which the property may be put." Black's Law Dictionary 445 (10th ed., 2014). A restrictive covenant is generally enforceable in equity in the form of a restraining injunction against the violation of the covenant or a mandatory injunction directing removal of a nonconforming structure already erected. See 20 Am. Jur. 2d Covenants, Conditions, and Restrictions § 262; see also *South Shore Homes Ass'n v. Holland Holiday's*, 219 Kan. 744, 753, 549 P.2d 1035 (1976) (ability to enforce covenant in equity persists only so long as there has not been change in character, conditions of neighborhood that neutralizes benefits of covenant, destroys its purpose). An enjoining party is generally not required to demonstrate damages caused by violation of a covenant in order to enforce the covenant through injunction. See *Clark v. Vaughan*¸ 131 Kan. 438, 443, 292 P. 783 (1930); see also *Persimmon Hill*, 31 Kan. App. 2d at 894 (quoting 20 Am. Jur. 2d, Covenants, Conditions, and Restrictions § 277). Moreover, the granting of equitable relief does not extinguish the right to sue for future violations.

> "Except when failure to enforce servitudes in common-interest communities or general-plan developments provides the basis for modification or termination due to changed conditions . . . property owners . . . *may enforce the servitudes against subsequent similar violations by the same or different parties* unless, under the circumstances then prevailing, enforcement would be unreasonable or inequitable." (Emphasis added.) Restatement (Third) of Property (Servitudes) § 8.3(2) (2000).

Although Kansas does not have a case directly on point, the general rule is that a party also can recover monetary damages for breach of a restrictive covenant.

"The usual measure of damages for the breach of a covenant is compensation for the actual loss suffered by reason of the breach. In a typical action for breach of a real-estate covenant, the measure of damages is the amount that will compensate the injured party for the loss that fulfillment of the contract could have prevented or the breach of it has entailed; the chief concern is to make the plaintiff whole and to secure to the plaintiff his or her rights under the contract." 20 Am. Jur. 2d Covenants, Conditions, and Restrictions § 272 (Measure of Damages).

See also Restatement (Third) of Property (Servitudes) § 8.3 (2000) ("A servitude may be enforced by any appropriate remedy or combination of remedies, which may include declaratory judgment, compensatory damages, punitive damages, nominal damages, injunctions, restitution, and imposition of liens.").

The language of the Grande Oaks subdivision's Declaration of Restrictions at issue here could not be more simple or straightforward: "The property . . . shall be occupied and used for single-family residence purposes only . . . . The provisions of this Declaration shall be deemed to be covenants running with the land . . . ." Both the plaintiffs and KDOT's predecessor in interest purchased their parcels subject to the single-family residence limitation.

Thus they acquired the benefits and burdens the covenant embodies.

*The Nature of the Plaintiffs' Interests*

The plaintiffs have expended a great deal of energy before the Court of Appeals and before us, arguing that a restrictive covenant creates a real property interest subject to condemnation and compensation, as opposed to a mere contract right not subject to condemnation and compensation. In addition to their reliance on the *Asset Mgmt.* passage quoted by the Court of Appeals majority, 28 Kan. App. 2d at 507, they have urged us to

15

follow what appears to be the clear majority view from our sister jurisdictions. The plaintiffs have cited Annot. Eminent Domain: Restrictive Covenant or Right to Enforcement Thereof as Compensable Property Right, 4 A.L.R.3d 1137, and have particularly relied upon cases from Maryland, New Mexico, Connecticut, and California as supportive of elements of that view. See *Southern Cal. Edison Co. v. Bourgerie*, 9 Cal. 3d 169, 172-73, 507 P.2d 964 (1973) (building restrictions constitute compensable property); *Town of Stamford v. Vuono*, 108 Conn. 359, 143 A. 245, 249 (1928) (land use restrictions "are in the nature of an easement constituting an interest in the land upon which they are imposed"); *Electro-Nucleonics, Inc. v. Washington Suburban Sanitary Com'n*, 315 Md. 361, 367, 554 A.2d 804 (1989) (covenant running with land ordinarily compensable property interest in condemnation context, at least to extent it adds measurable value to land to which attached); *Montoya v. Barreras*, 81 N.M. 749, 751, 473 P.2d 363 (1970) ("Restrictions as to the use of land are mutual, reciprocal, equitable easements in the nature of servitudes . . . and constitute property rights which run with the land.").

The plaintiffs also have directed our attention to Restatement (First) of Property § 566, comment b (1944) for the proposition that "condemnation of land subject to the obligation of a promise respecting its use in such manner as to extinguish the interest in the land created by the promise" means that "compensation must be made to those entitled to the benefit of the promise," and to 2 Nichols on Eminent Domain § 5.15[1] (now at 5.07[4] [3d 2016]) for the idea that restrictive covenants constitute equitable easements on the land restricted, and to Stoebuck, *Condemnation of Rights the Condemnee Holds in Lands of Another*, 56 Iowa L. Rev. 293, 301-02 (1970) to demonstrate that loss to the owner of a dominant parcel occurs when an entity with the power of eminent domain acquires a subservient parcel for use in some way violating a restrictive covenant.

16

For their part, as alluded to above, KDOT has not meaningfully contested that plaintiffs' rights to enforce the restrictive covenants on the KDOT parcels qualified as interests in real property. They have instead confined their most insistent argument to the significance of what they insist is a lack of any legally cognizable physical damage to plaintiffs' subdivision parcels under *Kirkpatrick*. They assert that EDPA and *Kirkpatrick* must be read to make the violation of the restrictive covenant before us today tangential, incidental, and noncompensable.

Each side is minimally helpful.

Regarding plaintiffs' arguments, although they are persuasive on their point, their point is irrelevant. It is by no means clear why the distinction between a real property interest and a contract right should be ceded so much power, because it makes no difference under the Fifth Amendment.

The United States Supreme Court has long recognized that "[a] contract is property, and, like any other property, may be taken under condemnation proceedings for public use." *Long Island Water Supply Co. v. Brooklyn*, 166 U.S. 685, 690, 17 S. Ct. 718, 41 L. Ed. 1165 (1897); see also *Lynch v. United States*, 292 U.S. 571, 579, 54 S. Ct. 840, 78 L. Ed. 1434 (1934) ("Valid contracts are property, whether the obligor be a private individual, a municipality, a state, or the United States. Rights against the United States arising out of a contract with it are protected by the Fifth Amendment."); *Penn. Coal Co. v. Mahon*, 260 U.S. 393, 414-15, 43 S. Ct. 158, 67 L. Ed. 322 (1922) (recognizing mineral rights as property right requiring compensation for taking); *United States v. Welch*, 217 U.S. 333, 339, 30 S. Ct. 527, 54 L. Ed. 787 (1910) (easement property subject to compensation requirements for taking under Fifth Amendment); *Cammeyer v. Newton*, 94 U.S. 225, 234, 24 L. Ed 72 (1876) (patent private property requiring just compensation for use without consent); 26 Am. Jur. 2d, Eminent Domain § 96

17

("Contracts and contract obligations are property, and as such, they may be condemned. A contract is a property right which may be condemned for just and adequate compensation."); Stoebuck, Nontrespassory Takings in Eminent Domain, 133 (1977) ("Even if one concedes the label 'contract rights,' that proves nothing, for it has long been recognized that contract rights, specifically those pertaining to land, are property for eminent-domain purposes.").

The problem with KDOT's argument, on the other hand, is that it requires an overread of *Kirkpatrick*.

EDPA, no matter its virtues, cannot be the be-all and end-all on the substance of eminent domain and inverse condemnation law in Kansas. It may expand upon but cannot constrict any rights Kansans are guaranteed by the Fifth Amendment. No matter how this court may interpret or construe the statutory language, the constitutional provision trumps.

> "Even though fundamental principles of State property law may define property rights, the Takings Clause nevertheless limits a State's authority to redefine preexisting property rights. Thus, 'a State, by *ipse dixit,* may not transform private property into public property without compensation,' *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 164, 101 S. Ct. 446, 66 L. Ed. 2d 358 (1980), nor can it 'sidestep the Takings Clause by disavowing traditional property interests long recognized under state law,' *Phillips,* 524 U.S. at 167, 118 S. Ct. 1925." *Washlefske v. Winston*, 234 F.3d 179, 183-84 (4th Cir. 2000).

We see some of the same sort of confusion about the breadth of the Fifth Amendment's protection in cases from other jurisdictions. To the extent that other jurisdictions have held that restrictive covenants are not property interests for Fifth Amendment purposes, they generally have done so under the erroneous assumption that a

property interest must be an interest in land for a Constitution-based taking to occur. See *Anderson v. Lynch*, 188 Ga. 154, 160, 3 S.E.2d 85 (1939) ("The most that can be said is that the restrictive covenants on which they rely are enforceable as between the parties thereto and their successors with notice. *They do not convey an interest in the land*." [Emphasis added.]); see also *Moses v. Hazen*, 69 F.2d 842, 844 (D.C. Cir. 1934) (restrictive covenants "are not truly property rights, but contractual rights, which the government in the exercise of its sovereign power may take without payment of compensation").

Both the Court of Appeals majority and Judge Atcheson were led astray by the plaintiffs' and other jurisdictions' misdirected focus on whether a restrictive covenant gives rise to a real property interest or merely a contract right. We agree with Judge Atcheson's direct point and the panel majority's implicit point that no previous Kansas case has directly answered the question. And a hasty review of our opinion in *Kirkpatrick* might lead to a conclusion that eminent domain applies only to real property interests, because it stated that "items of personal property are not compensable in condemnation actions unless the property is a fixture." *Estate of Kirkpatrick v. City of Olathe*, 289 Kan. 554, 568, 215 P.3d 561 (2009) (citing *City of Wichita v. Eisenring*, 269 Kan. 767, 783, 7 P.3d 1248 [2000]). But the prohibition on compensating for losses to personal property is merely a reference to situations in which the State has attempted to condemn the land on which the property rests. See *Eisenring*, 269 Kan. at 783 ("Generally, the value of personal property is not included *in the value of the land* unless the property is a fixture." [Emphasis added.]); see also *Kirkpatrick*, 289 Kan. at 568 ("In either case, the reason for the exclusion is that damage to personal property is not part and parcel to the condemnation of the real estate in question, but rather is a tangential consequence of that condemnation."). And a restrictive covenant is not personal property. It is an interest born of real property ownership. Plaintiffs acquired an interest in controlling the use of KDOT's subservient parcels by virtue of their purchase of their own dominant parcels.

19

The bottom line is that it matters not whether the right held by plaintiffs under the restrictive covenant in this case is further identified as a real property interest or a contract right. For purposes of eminent domain—and, by extension, inverse condemnation—each is "property" requiring just compensation under the Fifth Amendment if taken by the State. See also Restatement (Third) of Property (Servitudes) § 2.18, comment h (2000) ("The power of eminent domain can be used to condemn servitudes, imposing the burden on the private landowner for the benefit of the public at large, or the condemning entity."); Restatement (Third) of Property (Servitudes) § 1.1 (2000) ("A servitude is a legal device that creates a right or an obligation that runs with land or an interest in land.").

*KDOT's Violation of the Covenant*

KDOT has insisted that the essential issue in this case is

"not whether restrictive covenants constitute property rights vis-à-vis owners of other lots subject to those restrictions or vis-à-vis a governmental entity utilizing lots for a public purpose in contravention of the restrictions. Rather, the question is whether violation of restrictive covenants by a public entity requires compensation under the Kansas EDPA."

KDOT has begun its argument with the self-evident proposition that cases from other jurisdictions, regardless of number or rationale, are not controlling; and it has then stated that the result here should be determined "by whether the provisions of the EDPA indicate a legislative intent for a violation of a restrictive covenant to give rise to a compensable claim."

We have previously explained that KDOT's exclusive dependence on EDPA for substantive law and both parties' and the Court of Appeals' total reliance on arguments

20

about the presence or absence of physical damage are misguided. We did use the language "physical takings of property interests" in *Kirkpatrick,* but we did so only to distinguish between a compensable "taking" based on damages to property under EDPA and a compensable "taking" based on a more traditional transfer of a property interest from the property owner to the condemning authority—*i.e.*, a transfer of legal title. See *Kirkpatrick*, 289 Kan. at 560-61 ("The conclusion that compensation is only required where a transfer of property rights has occurred or where property damage is needed to complete a public improvement project is not based in the language of the EDPA."). In fact, a physical taking is not inevitably required. See *Ventures in Property I v. City of Wichita*, 225 Kan. 698, 708-09, 594 P.2d 671 (1979) (recognizing national trend toward conclusion that direct physical invasion of property not required under Fifth Amendment for property owner to be entitled to compensation; pervasive regulation, zoning restricting owner's reasonable use of the real property result in compensable taking). The protections of eminent domain extend beyond tangible property and include protection of intangible types of property such as patents, mineral rights, and contract rights. Limiting eminent domain to tangible property is akin to what one court has recognized as "[t]he early popular notion" that there is "'no taking without a touching.'" *State Through DOTD v. Chambers Inv. Co.*, 595 So. 2d 598, 601 (La. 1992). Compare *Callender v. Marsh*, 18 Mass. 418 (1823) (no compensation for blocking of abutting owner's street access) with *Gardner v. Village of Newburgh*, 2 Johns. Ch. 162, 167 (N.Y. 1816) (allowing compensation to riparian owner whose water level lowered by municipal action). Indeed, our legislature has recognized more modern protection of intangible rights arising out of real property ownership by including numerous references to "interests" in land in EDPA. See K.S.A. 2016 Supp. 26-501(c)(2); K.S.A. 26-502; K.S.A. 2016 Supp. 26-506; K.S.A. 2016 Supp. 26-507(a); K.S.A. 2016 Supp. 21-508(a); K.S.A. 26-513(c).

At oral argument, KDOT's counsel willingly conceded that KDOT's nonconforming use of its subdivision parcels extinguished plaintiffs' restrictive covenant

21

as to those parcels—*i.e*., plaintiffs' interests in real property were destroyed—and would continue to do so at least as long as KDOT continues to own the parcels. In theory, another party could someday purchase the KDOT parcels and might stop the nonconforming use. But, for all practical purposes, KDOT's violation of the covenant is permanent as to these plaintiffs. Plaintiffs' have been deprived of all economic value of their right of control under the covenant; their property interests, in this case, real property interests, have been taken. See Stoebuck, Nontrespassory Takings in Eminent Domain, 19 (1977) ("In most cases [a taking] means that a property interest has been transferred from an owner to an entity having the power of eminent domain."); 26 Am. Jur. 2d, Eminent Domain § 9 ("A finding of a taking requiring just compensation depends on whether someone has been deprived of the economic benefits of ownership, not whether the State captures any of those benefits.").

*Just Compensation and Public Policy*

Given the holdings above, we must remand to the district court for determination of the amount of "just compensation" due to plaintiffs. There are two possible components to each plaintiff's award that must be considered on remand.

The first component is intended to compensate plaintiffs for any qualifying *damage caused to their parcels* by the nonconforming use. In order to recover, plaintiffs' proof will have to meet the requirements of EDPA, as interpreted in *Kirkpatrick*. See K.S.A. 26-513(a); *Kirkpatrick*, 289 Kan. at 569 ("damage must be substantial and must be the planned or inevitable result of government action undertaken for public benefit"). The parties have disagreed during this appeal on whether plaintiffs can muster such proof or have already failed when called upon to come forward with it. The record does not definitively settle this question for us, and we leave it to our able district court colleague to sort out this disagreement on remand.

22

The second component should compensate plaintiffs for the *taking of their rights to control the use of KDOT's parcels* under the restrictive covenant. KDOT admits those rights were effectively extinguished by its nonconforming use, which, we have established, was a taking of one "stick" in each plaintiff's "bundle of sticks." The value of each plaintiff's right of control under the covenant has nothing to do with the desirability or lack of desirability of the particular public use; it is the value of the right of legal control involuntarily forfeited. It is equal to the difference between the fair market value of the dominant estate with the restrictive covenant intact and the fair market value of the dominant estate with the restrictive covenant taken. See K.S.A. 26-513(c).

> "If only a part of a tract of land or interest is taken, the compensation and measure of damages is the difference between the fair market value of the entire property or interest immediately before the taking, and the value of that portion of the tract or interest remaining immediately after the taking." K.S.A. 26-513(c).

This will account for removal of the restrictive covenant "stick" from each plaintiff's "bundle of sticks." See Annot. Eminent Domain, 4 A.L.R.3d 1141 ("Once the theoretical right to compensation for the loss of a negative easement is recognized, the problems of the action are substantially the same as in any other eminent domain proceeding. Practically, the property owner must establish the value of the right taken, at the time of the taking, by competent lay or expert testimony. . . . [C]ounsel for the condemning authority may have some hope of escaping substantial liability by attacking the proposed proof of value and urging that at most nominal damages should be allowed.").

KDOT and the *amici* have also advanced several public policy arguments that are consistent with the rationales of jurisdictions holding that restrictive covenants are noncompensable contract rights. These arguments can be summarized as follows: (1)

23

acknowledging restrictive covenants as property for purposes of eminent domain would inhibit governmental bodies from performing their functions, (2) compensation for restrictive covenants would be too expensive and procedurally cumbersome, especially for subdivisions with a large number of lots, and (3) property owners colluding to create compensation through eminent domain either in anticipation of an imminent taking or through a covenant may prohibit governmental improvement projects. See Stoebuck, Nontrespassory Takings in Eminent Domain, 133-38 (1977).

We see these arguments as logically flawed and overstated. For example, the existence of private property interests do not prevent the exercise of eminent domain; they merely require the payment of just compensation when the private property interests are extinguished for public use. But we need not further address these policy arguments today. It is sufficient to say that the ultimate arbiters of public policy wisdom are the citizens whose Fifth Amendment rights are vindicated by our ruling. If those arbiters decide to change the public policy animating the amendment, they are free to do so.

CONCLUSION

For the reasons discussed above, we affirm the result of the Court of Appeals' decision and reverse and remand this case to the district court for further proceedings.

BILES, J. not participating.
MICHAEL J. MALONE, Senior JUDGE, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 111,082 vice Justice Biles under the authority vested in the Supreme Court by K.S.A. 20-2616.